Gaitano Mugaviro, Administrator, Appellee, v. Chicago, Burlington & Quincy Railroad Company, Appellant.

Gen. No. 7,592.

1. APPEAL AND ERROR—*conclusiveness of findings as to negligence and contributory negligence not manifestly against weight of evidence.* The reviewing court will not disturb the findings of the jury on the issues of negligence and contributory negligence, reached under proper instructions, unless manifestly contrary to the weight of the evidence.

2. RAILROADS—*sufficiency of evidence of negligence in operation of backing train at crossing.* Where in an action for the death of an occupant of an automobile in a collision in the nighttime with a backing freight train at a street crossing the evidence was conflicting as to whether any warning signal was given of the train's approach, it could not be said, on appeal from a judgment for plaintiff, that the jury was not warranted in finding that the defendant negligently operated its train.

3. RAILROADS—*sufficiency of evidence as to due care of decedent in action for death by collision at railroad crossing.* Testimony in an action to recover damages for the death of an occupant of an automobile in collision in the nighttime with a backing freight train at a street crossing, that the automobile was stopped a short distance from the crossing, with testimony from which the jury could have found that the train gave no warning of its approach, held to sustain the finding of the jury that the decedent was in the exercise of due care for his own safety.

4. DAMAGES—*sufficiency of evidence to support instruction as to measure of recovery by next of kin in action for wrongful death.* Where there was proof, in an action for wrongful death, of actual contributions by the decedent to the support of his brothers and sisters, an instruction as to the measure of the damages recoverable which authorized consideration of his probable future contributions to his next of kin, was not erroneous, the right of such brothers and sisters not being limited to nominal damages.

5. DAMAGES—*propriety of verdict for $8,500 for death of boy of nineteen.* Where during the three years preceding his death at the age of 19 the plaintiff's decedent had contributed $5,000 out of his earnings to his father, receiving from him his support and some spending money, the net contribution, totaling nearly half that sum, having been spent for the benefit of the father and the dece-

dent's brothers and sisters, a verdict of $8,500 for his wrongful death cannot be said to be excessive.

6. DEATH BY WRONGFUL ACT—*form and distribution of recovery in action by administrator under statute.* An action by an administrator for the wrongful death of his decedent is, under the statute, for the benefit of the next of kin and the recovery must be in gross, the matter of distribution being one within the jurisdiction of the probate court.

Appeal by defendant from the Circuit Court of Peoria County; the Hon. CHARLES V. MILES, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed March 3, 1926.

J. A. CONNELL and JACK, IRWIN & JACK, for appellant.

McGRATH, STONE & DAILY, for appellee.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

This is an appeal from a judgment for $8,500 and costs rendered against the Chicago, Burlington & Quincy Railroad Company and in favor of the appellee as administrator of the estate of Marion Mugaviro, deceased, on account of the death of said decedent.

Marion was 19 years of age at the time of the accident which resulted in his death. He was riding in a Ford coupé owned and driven by another young man by the name of Granvel M. Elliot. The accident occurred about 7:15 p. m., December 16, 1923, at an intersection of the company's tracks with Fort street, in the City of Farmington, Illinois. Fort street runs east and west and crosses the railroad company's tracks at a right angle. The said tracks run in a general north and south direction, but a short distance north of the intersection the tracks curve toward the west. The railroad station and a large building are located on the east side of the tracks at some distance north of the intersection and to some extent obstruct the view of those who come from the east along Fort

street. A civil engineer, testifying on behalf of the defendant, made certain measurements and testified that at a distance 85 feet east of the center of the railroad crossing an unobstructed view could be had up the railroad track for 159 feet. At a distance of 57 feet from the center of the track an unobstructed view could be had for 195 feet; and at a distance of 44 feet from the center of the track an unobstructed view could be had for 294 feet. The railroad tracks extending north from Fort street are laid in a cut which is estimated to be about 6 feet deep with the high bank on the west side of the tracks. On the night in question a train of twenty coal cars was being pushed south along the defendant company's tracks to be transferred to the M. & St. L. R. R. Co. tracks. The movement necessitated crossing Fort street. The locomotive was attached to the north end of the string of cars and was headed south. The cars were each 40 feet or more in length, so that the total length of the train, including the engine, was between 800 and 850 feet. The headlight on the engine was burning, but because of the curve in the tracks it could not be seen at the crossing. The crossing was lighted by an electric light located 49 feet east of the center of the track and there was another light some distance west of the track. There was stationed at the south end of the farthest car from the engine, a brakeman, with a lantern. He testified that it was his duty to watch the crossing and to give necessary signals. According to his statement, he was standing on the inside of the car, but had one leg over the south end of it resting upon the brake platform. With one hand he held on to the brake wheel and with the other hand he held a lighted lantern. This lantern was the only light on the forward end of the train. He further testified that he first observed the approaching automobile when both the train and the automobile were about 80 feet distant from the crossing; that he was unable to see inside the automobile and determine

how many people were in it; that it slowed down until it got within about 35 feet of the crossing, where it stopped for a moment; that he could then tell by the movement of the automobile that the driver let the brakes off; that as soon as he observed it, he held his lantern out over the car end and commenced "hollering" as loud as he could; that when he saw a collision was inevitable, he jumped back into the car and then over the side onto the ground, where he operated the angle cock, setting the air brakes on the train. By that time the train had struck the automobile and was pushing it forward along the tracks. The train stopped a few feet after the application of the air brakes had been made. It is conceded by all parties that both the train and the automobile were running at a slow and about the same rate of speed. Both passengers of the automobile were killed.

The declaration, by appropriate counts, charges general negligence, the failure to give any warning at all of the approach of the train, the failure to give any sufficient warning of such approach; the failure to give the statutory warnings by ringing a bell and sounding a whistle; and the failure to comply with an ordinance requiring the constant ringing of the bell of the engine while the train is in motion. Proper averments as to due care are contained in the declaration.

Appellant urges that the judgment should be reversed: first, because the verdict was against the manifest weight of the evidence; second, because the court erred in giving instruction No. 14 in behalf of plaintiff; and third, because the damages are excessive and indicate a manifest prejudice against the defendant.

The question of due care and contributory negligence upon the part of the plaintiff and the question of the defendant's negligence are ordinarily questions of fact to be determined by the jury, and when they are once determined under proper instructions, courts will not disturb findings of the jury unless they are

manifestly contrary to the weight of the evidence. (*Chicago & E. I. R. Co. v. Schmitz,* 211 Ill. 446; *Dukeman v. Cleveland, C., C. & St. L. R. Co.,* 237 Ill. 104.)

It is not disputed that the accident occurred after dark and at a time when it was the duty of the railroad company to give warning of an approaching train by having on it a light which is clearly visible. The company was operating rather a long cut of cars. Its engine was a considerable distance from the car farthest away from it. Because of the curve in the tracks the engineer could not see the crossing. Neither was the light from the headlight of the engine visible to those who were about to pass over the intersection. The engineer was not in a position where he could receive signals direct from the brakeman on the front of the train. Another brakeman was stationed about the center of the cut of cars in order to relay any signals he might receive from his fellow brakemen. The train approached the crossing from around the curve and through the cut at a slow rate of speed. There were several disinterested witnesses who testified that they did not see any light from the brakeman's lantern until just before they heard the crash of the collision. They testified that they did not hear any bell or whistle. A witness by the name of Crane, who was walking along the street from the east toward the railroad crossing, testified that the train made so little noise as it came upon the crossing, and that it was so dark at the time, that he almost walked into the train before he observed it. His wife corroborated his testimony. Several of the train men, however, testified that an automatic bell was continuously rung and that the whistle was blown. All this presented a situation for the decision of the jury, and, under the authorities above cited, we feel that it would be against precedents for us to say that the jury was not warranted in finding that the defendant negligently operated its train.

The testimony of the brakeman, Martin, who was at

the end of the train, disclosed that the automobile slowed down and stopped a short distance from the intersection. We can conceive of no reason for stopping the car, except to permit those in it to attempt to ascertain if a train was approaching. This fact seems to us to indicate the exercise of due care and caution on the part of the plaintiff's intestate, and so we conclude that the questions of due care and contributory negligence on the part of said intestate were correctly determined by the jury.

The second contention of appellant is that the court erred in giving plaintiff's 14th instruction, which is as follows:

"The Court instructs the Jury that if you find for the Plaintiff, then it is your duty to find the amount of money, if any, he shall recover, based upon the pecuniary loss, if any, to the next of kin of Marion Mugaviro, deceased, and in arriving at such amount you have a right to take into consideration the relationship of the deceased to the parties for whose benefit this suit is brought, if the same is shown by the evidence, his physical and mental capacity, his age, earning capacity, if any, and habits of industry, if any, if the same are shown by the evidence, and what he likely and in all probability would have contributed to the support of his next of kin, if shown by the evidence, modified by the possibility of other contingencies, which might lessen or destroy the possibility of such benefit, and from all the facts and circumstances in evidence, determine as accurately as may be, the pecuniary loss, if any, sustained by his next of kin by reason of his death," etc.

It is admitted by counsel for appellant that this instruction, in the ordinary case, correctly expresses the law, but it is said that, as applied to the facts in this case, it gives to the jury an opportunity to speculate in regard to contributions which decedent might make to his brothers and sisters in the future, and that the

jury must have indulged in such speculation, in order
to assess the damages in so large an amount. The con-
tention is based on the fact that the decedent was 19
years old and had been a coal miner for several years;
that in the years 1920 and 1921, his employment was
steady and he received, as wages, $1,997.76 and $1,526.-
02, respectively; that in 1922 his employment as a
miner was not steady on account of a strike and he
went to Detroit where he procured work; that his
wages as a miner during that year were $893.54 and
he worked six weeks in Detroit sending home $25 or
$30 every two weeks; that in 1923, down to the time
of his death, he had earned $879.12; that all of dece-
dent's earnings were turned over to his father; that the
father and two other sons were also employed as coal
miners; that the earnings of those sons were turned
over to the father; that the amount the father so re-
ceived for himself and sons sometimes amounted to
about $500 every two weeks; that the father paid for
decedent's clothing, boarded him and gave him spend-
ing money out of each pay, amounting to $5 to $10 at
a time; that the evidence of all of these circumstances
shows that decedent did not contribute to the support
of any of his brothers and sisters, of whom there were
seven; and that the turning over of decedent's earn-
ings to his father was not a voluntary contribution
but a thing required of decedent, because he was an un-
emancipated minor.

The law will ordinarily presume that a parent has
suffered substantial damages by reason of the death
of a son 19 years of age, but, in the absence of proof
to the contrary, there is no presumption that a brother
or sister has suffered more than nominal damages. In
*Rost v. Noble & Co.,* 316 Ill. 357, the Supreme Court, in
speaking of a surviving brother 14 years old, said:
"There was no evidence of the brother having received
any assistance from the deceased or being dependent
upon him. It was wholly conjectural whether he would

ever receive any pecuniary aid from his brother, and under such circumstances it was held in *Rhoads v. Chicago & A. R. Co.*, 227 Ill. 328, that only nominal damages could be recovered in an action by an administrator. The statute authorizes a recovery of such damages, as the jury shall deem fair and just compensation, with reference to the pecuniary injury, resulting from the death   *   *   *.  The law presumes substantial injury to the parents, but the damages to collateral kindred are only such actual damages as are proved.''

But, in the case at bar, there was proof that defendant's brothers and sisters, nearly all of whom were younger than he, were to some extent dependent upon the earnings of the decedent for their support. The father testified that the money was used toward supporting the rest of the family. It is argued by counsel for appellant that the father's income, derived from his own earnings and that of his sons, was so large that the earnings of his deceased son were not needed in the support of the family. In cases of this kind no rule can be laid down concerning frugality and economy. If the fact be that the decedent's brothers and sisters depended in whole or in part upon contributions from the earnings of their brother, they were entitled to recover more than nominal damages and this is true without regard to the amount of the father's income. The proof tending to show that they did receive the advantage of such contributions is not denied. Consequently, there is no basis for the contention that the brothers and sisters were entitled only to nominal damages and that the said instruction gave the jury an opportunity to speculate upon what the decedent might have, sometime in the future, contributed to them.

But, even if there had been no proof in the record of actual contributions to the support of the brothers and sisters, the instruction complained of would not have been erroneous. In that case, the trial court would undoubtedly have instructed the jury, under the

authority of *Rost v. Noble & Co., supra,* that the collateral heirs could recover no more than nominal damages. But no such instructions were asked for by appellant, and, as we have observed above, no such instructions should have been given in this case, because there was proof to support the recovery of actual damages.

There is another reason why the said instruction should not be deemed erroneous: it is not within the province of the circuit court to apportion or distribute the damages among the next of kin. Under the statute, the suit is by an administrator for their benefit and the recovery must be in gross. The distribution of the amount recovered is within the jurisdiction of the probate court. (*Baltimore & O. S. W. Ry. Co. v. Then,* 159 Ill. 535.)

The third contention is that the damages allowed are excessive. The evidence shows that in less than three years' time the decedent had contributed approximately $5,000 out of his earnings. To be sure there is to be deducted therefrom the cost of his board and clothing, and the amount he was given for spending money. According to the computation made by counsel for appellant, he was contributing at least $70 per month net, or $840 per year. In view of the fact that the evidence shows that the decedent, in his lifetime, was a healthy, industrious and sober young man, it cannot be seriously argued that the damages allowed are excessive. The jury were not confined, in assessing damages, to the value of the services of deceased until he would have arrived at majority, but might have considered the continuance of his life and the benefits to be derived therefrom afterward. (*Lichtenstein v. Fish Furniture Co.,* 272 Ill. 191.)

We perceive no error in this case. Therefore the judgment is affirmed.

*Judgment affirmed.*