Crim Uhls, Administrator of the Estate of Maynard Uhls, Deceased, Appellee, v. Old Ben Coal Corporation, Appellant.

256

Opinion filed June 8, 1935. Rehearing denied September 5, 1935.

W. H. HART, of Benton, and STONE & FOWLER, of Marion, for appellant.

GEORGE W. DOWELL, LESLIE A. CRANSTON, both of Du Quoin, D. F. MOORE, of Benton, and Jos. B. McGLYNN, of East St. Louis, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Crim Uhls, administrator of the estate of Maynard Uhls, deceased, herein referred to as the plaintiff, instituted suit in the circuit court of Franklin county against the Old Ben Coal Corporation and Central Illinois Public Service Company to recover damages arising by reason of the alleged wrongful death of his intestate son, 12 years of age. At the conclusion of plaintiff's evidence, the court directed a verdict for the Public Service Company and the court's ruling on

that motion is not now before the court. The case proceeded against the Old Ben Coal Corporation and resulted in a verdict and judgment against it for $5,000. It has perfected its appeal and will be herein referred to as the defendant.

The errors relied upon for reversal are on questions of pleading, the refusal of the court to allow motions for a directed verdict *non obstante veredicto* for a new trial and in arrest of judgment and in rulings on evidence and instructions.

Plaintiff's intestate was injured August 16, 1931, and died from the injuries on the following day. A declaration containing one count was filed January 21, 1932. Two days before the expiration of the year following the date of death, two additional counts were filed. Subsequently, a demurrer was sustained as to all three of these counts. December 21, 1932, plaintiff filed an amended declaration containing four counts. The defendant then filed a general issue plea and two limitation pleas. The second plea definitely alleged the insufficiencies of plaintiff's original declaration and two additional counts which plaintiff relied upon to sustain pleas. Plaintiff's demurrer to the special pleas was sustained and defendant elected to stand by its pleas.

The count of the original declaration did not state a cause of action. The two additional counts did allege facts, although defectively stated, that would state a cause of action but no venue was alleged in the caption. In the caption of the amended declaration filed after the expiration of the year, the venue was alleged to be in Franklin county. Defendant's contention raises but one question as to the additional counts and that is in reference to the failure to allege a venue.

At the early common law, the allegation of venue in the body of the count was necessary to determine whether the action had been instituted in the proper court. To avoid useless statement and repetition of

venue in all personal actions, it was provided by Reg. Gen. Hil. T. 4 W. 4 reg. 8, Chitty Pleading, Vol. 1, p. 287, that "The name of a county shall in all cases be stated in the margin of a declaration, and shall be taken to be the venue intended by the plaintiff, and no venue shall be stated in the body of the declaration or in any subsequent pleading. Provided that in cases where local description is now required such local description shall be given."

This case is an action to recover damages for injuries causing death, which were sustained by a child while he was playing around an alleged attractive nuisance, kept and maintained by the defendant. The first additional count contains the averment that the attractive nuisance was located upon property of the defendant which abutted upon a public highway and the highway is definitely located as being on the section line between certain sections with the township and range given which would locate it in Franklin county, but no county is named. The second additional count alleged that plaintiff resided with his family on a farm adjoining a certain highway and then describes the highway by the same legal description as contained in the first count. In describing the location of the scene of the nuisance and the accident, it was located as in the "county aforesaid" when, in fact, no county is named except as to the location of the highway. This was a sufficient allegation of the venue of the scene of the accident. *St. Louis, J. & C. R. Co. v. Thomas,* 47 Ill. 116; *Chicago City Ry. Co. v. McMeen,* 206 Ill. 108; *Paul v. Weber,* 223 Ill. App. 257. Even in transitory actions, the allegation of place, if matter of description is material and must be proved as laid. *Chicago City Ry. Co. v. McMeen, supra.* If the venue had been stated in the caption of the additional counts, it would have been the same as the venue alleged in the body of the counts and would not in any way change the cause of action therein stated. The venue

of the site of the attractive nuisance as alleged in the amended declaration was the same as in the additional counts. The venue of the scene of the alleged nuisance being sufficiently stated in each of the additional counts, it is our conclusion that each of said counts stated the same cause of action as alleged in the amended declaration and that there was no error in sustaining the demurrers to each of the limitation pleas.

The next contention of the defendant is that the court erred in overruling its motion for a directed verdict. The evidence discloses that the defendant had been operating a coal mine for a number of years in Franklin county and in 1927, it acquired title to a small tract of land 25 feet square, located a short distance from its mine, for the purpose of placing thereon an electric substation to transmit electricity into its mine. This tract of land abutted upon the south side of an east and west public highway. Plaintiff and his family lived about an eighth of a mile east of the substation on the same highway and had lived there for more than 10 years. The highway had been used by the public for many years and children traveled it passing the substation on their way to and from school. The site of the substation at the time of the accident was fenced on three sides with a fence two to four feet in height but the side opening onto the highway, being the north side, was not fenced. There were no warning or danger signs posted at any place on or about the premises. The substation building was about 14 by 18 feet, 10 feet high and covered on the sides and roof with a corrugated, galvanized metal covering. It was erected in 1927 and the metal covering showed the action of the elements upon it. The entrance to the building was by means of a door on the north side. Inside the building were certain electrical appliances but on the day of the accident, the door was closed and the machinery in the building was not exposed to

view by window or other means. Immediately north of the building were three transformers somewhat covered with oil and dirt. The electric current was transmitted to the substation from the main line of the Central Illinois Public Service Company west of the substation by means of a stub line which terminated at the station.

Near the northeast corner of the substation building there was an electric pole about 25 feet high, carrying cross-arms 20 feet or more from the ground. The electric wires were attached to the cross-arms by means of insulators. A few feet north and west of the northwest corner of the building and about 28 feet west of the above described pole was another electric pole 25 feet in height, carrying cross-arms and insulators to which the high tension wires were attached. There was a telephone box attached to the east side of this pole about five feet from the ground. Immediately south of the pole was a fence post about five feet in height. Extending between the two poles and attached to them were two horizontal pipes about three feet apart, the lower one being 16 feet from the ground. According to the photographic exhibits in evidence, there were three wires extending downward from the high tension wires and connected to the horizontal pipes by means of insulators. About midway between the ends of the horizontal pipes were three bars extending perpendicularly from one of the horizontal bars to the other. On these perpendicular bars, switches were attached which, when thrown open, prevented the electric current from passing below them into the transformers. They were opened and closed from the ground by means of a long pole. At the time of the accident, the mine had been closed for several months and these switches were open during all the time including the day of the accident. Neither of these electric poles had any spikes or ladder attachments for climbing. Each pole was about a foot in

diameter and there is evidence tending to prove that the east pole stood on the boundary line between the highway and the substation site; that the west pole, the one which deceased climbed, was in the highway, there being a space of five inches between the pole and the south line of the highway. At the time of the accident, the electric current was not closer to the ground than the upper switches on the horizontal pipes between the poles for about 18 to 20 feet above the ground. The wires were copper and not insulated.

Plaintiff's intestate, a boy 12 years of age, was residing with his father and mother on a farm a short distance east of the substation. The accident occurred on a Sunday afternoon. There were visitors at the Uhls' home and ice cream had been served on the lawn. Deceased was there at that time but soon thereafter he and another boy nine years old began playing in the public highway with a toy home-made automobile. In about 30 minutes from the time of the gathering on the lawn, the boys were at the substation. The companion of the deceased was the only eyewitness to the accident. He testified that they went down to the electric station and that deceased climbed on to the fence post near the light pole which stood near the northwest corner of the building, put his arms around the light pole and with his arms and knees "shinnied" up the pole and when he reached the lower horizontal pipe, he walked out on it; that in so doing, he touched an insulator and said, "That has got some power behind it"; that immediately there was a flash and deceased fell to the ground. Witness testified that when the deceased started to climb the pole that he told him not to go up and asked him to go to another place to play; that deceased told him it wasn't dangerous and asked the witness to come on up. Witness tried to climb the pole but could not.

Each of the four counts of plaintiff's amended declaration alleges that the two poles at the corner of the

building were in the public highway and that the poles, building and other appliances were attractive to children of tender years, which was known to defendant or by the exercise of ordinary care should have been known by it. The negligence charged in the first count was that the defendant failed to use ordinary care and diligence in placing and maintaining the building, poles, crossbars and other appliances on private property a reasonable distance from a public highway so as to protect children. The negligence charged in the second count was the failure to enclose the building, poles and appliances by fence or wall. The third count was the failure to mark the building, poles and appliances with suitable warning and danger signs. The fourth was the failure to keep the wires properly insulated.

There is no evidence of an express invitation by the defendant to children to play around the substation and there is no evidence that it had any notice that children played around said premises. Two witnesses called by plaintiff testified that sometime prior to the accident they had seen children playing on the ground around the poles and building but their evidence was indefinite and uncertain as to when they had seen them or who it was. There is no evidence that anyone ever saw any child on the poles. The question then arises, Did these poles, building and other appliances, constructed as they were, constitute what is commonly called attractive nuisances?

Counsel for defendant has cited many cases from other jurisdictions holding that structures similar in design to this and used for transmitting electricity were not attractive nuisances. We feel that the Supreme Court of this State has applied the attractive nuisance doctrine to instrumentalities so similar to the one in this case that we are constrained to hold that there is evidence tending to prove that it was an at-

tractive nuisance and that the court properly submitted the question to the jury.

In *Stedwell v. City of Chicago*, 297 Ill. 486, an action was brought to recover damages for injuries sustained by a boy 11 years and seven months old. The electric wires with which he came in contact were owned by the city and used for lighting the streets. They were suspended from poles along the street and at the intersection of an elevated railway the wires dropped and passed under the elevated structure and were attached to it by means of insulators. The brackets to which the insulators were attached were fastened by means of wooden arms to the steel post supporting the elevated structure. The distance from the wire so fastened to the surface of the street was approximately 13 feet. The iron posts supporting the elevated structure were set in concrete and there were crosspieces between the sides of the post giving the appearance of lattice work extending from the ground to the upper structure. The wire in question passed within 10 inches of one of these steel posts. The plaintiff while playing in the street climbed the lattice work on one of the posts and came in contact with the wire. The plaintiff recovered a judgment which was affirmed. The court said, ''Whether the pillar was so attractive to children in their sports as to suggest the probability of the accident was a question for the jury.'' *City of Pekin v. McMahon*, 154 Ill. 141; *Stollery v. Cicero Street Ry. Co.*, 243 Ill. 290.

In *Deming v. City of Chicago*, 321 Ill. 341, the plaintiff recovered a judgment against the defendant for the wrongful death of his intestate, a boy nine years old. He came to his death by coming in contact with an electric wire belonging to the defendant. A poplar tree 30 or 40 feet in height, the lowest limb being six or seven feet above the ground stood in a grass plot in the defendant public street. About 20 feet above

the ground and a foot from the trunk of the tree were two electric wires which were used by the city for lighting the streets. The deceased climbed the tree for the purpose of getting a kite which was entangled in the wires and in so doing was electrocuted. The court there said: ''This injury occurred in a tree in a public street and the deceased was, therefore, not a trespasser at the time he was killed. (*Stedwell v. City of Chicago,* 297 Ill. 486.) Plaintiff in error was bound, in placing in the street wires which carried a heavy load of electricity, to guard against accidents by the exercise of that degree of care commensurate with the danger incident to the use of such a dangerous agency. (*Hausler v. Commonwealth Electric Co.,* 240 Ill. 201.) Whether the tree located in the public street was so attractive to children in their sports as to suggest the probability of such an accident as occurred, and whether the city was negligent in maintaining the wires as it did, were questions for the jury. (*Stedwell v. City of Chicago, supra.*) There was sufficient evidence of negligence to justify the court in submitting the case to the jury, and the motion to direct a verdict was properly overruled.''

In *Wolczek v. Public Service Co.,* 342 Ill. 482, the plaintiff, a boy 11 years of age, received injuries while climbing an unguarded steel tower which supported uninsulated wires which carried a high voltage of electricity through a forest preserve of Cook county. The tower was erected on a concrete base three and one-half feet square and had four main columns or legs. Horizontal braces connected these legs about two feet from the base and struts ran diagonally at an angle of 45 degrees from one leg to another on each side to the top of it. The distance along one leg of the tower from the point where one strut joined it to the point where the next strut joined the same legs was six feet. Beginning 14 feet above the ground, a ladder was

formed which extended to the top of the tower. The cross-arm carrying the wire was 36 feet from the ground. The wires were a little less than two feet from the side of the tower. The plaintiff, while playing in the forest preserve with other children, climbed the tower by means of the struts and the ladder and came in contact with the wire charged with electricity. The court in passing upon the same question under consideration in this case said, ''Considering whether there is any substantial evidence which, when considered most favorably for defendant in error, tends to show an implied invitation to children to play on this tower, we have seen that a caretaker of the forest preserve district had seen other children climbing on the bottom bars of this tower and had told them to get off. Four of the six girls, the oldest 13 years of age, of the party present at the time defendant in error was injured, climbed as high as eight feet on the struts of the tower. They testified that they were playing and climbing around the tower to have fun. The road extending through the forest preserve passed within a few feet of this tower. The children while playing in the forest preserve were where they had a right to be. The struts of this tower were easy to climb. The warning sign had been taken off the tower and not replaced. The tower was not fenced and bore no warning sign of any character. Can it be said that reasonable minds will agree, on consideration of all this evidence, that it, with its reasonable intendments and inferences, when considered in its aspect most favorable to the plaintiff's cause, does not constitute any substantial evidence that the tower was especially attractive to children? If such can be said then it must be held as a matter of law that this material allegation of the declaration is unsupported by proof and that the trial court erred in refusing to give an instruction for the defendant. We are unable to say, however, that this does not

constitute any substantial evidence of the attractiveness of the tower to children. We are of the opinion, therefore, that the record contains evidence tending to show that the tower was attractive to children, that there was no warning, and that such evidence tended to prove an implied invitation to children to climb upon it. It is not contended that the defendant in error was a trespasser before he went upon the tower. While the tower was located on the right of way of plaintiff in error 100 feet wide, the line extended through the forest preserve, and there is no contention that the children were trespassers while on the right of way.''

In this case there is no contention that defendant did not have the right to erect the poles in their respective locations. Deceased was not a trespasser until he climbed onto the fence post and started to climb the pole. Under the rules announced in the foregoing cases, we find that there is evidence in this case which tends to prove that the instrumentalities in question were attractive to children and did attract plaintiff's intestate from the public highway where he had a right to be on to the pole and structure in question.

Defendant further contends that even if this pole and structure was attractive, the plaintiff failed to prove that the deceased was in the exercise of ordinary care for his own safety according to the intelligence and capacity of a boy of his age. The rule is that children are not held to the same accountability as adults. At common law a child under the age of seven years was conclusively presumed not responsible for his acts. Between the ages of 7 and 14 years this presumption still prevailed but it might be overcome by proof of the intelligence or capacity of the child. That rule has been followed in this State. *Wolczek v. Public Service Co., supra.* On the trial of this case, plaintiff introduced no evidence tending to prove the intelligence or capacity of the deceased. Defendant introduced evi-

dence to the effect that the deceased attended country school, was of normal intelligence for a boy his age and athletically inclined. Defendant contends that the statement made by the deceased to his playmate just before his death when he touched the insulator, ''that thing has some power behind it,'' is conclusive proof that he knew the dangerous character of the instruments he was playing around and should therefore be held to have been guilty of contributory negligence. As against this, the evidence shows that when the deceased started to climb the pole his playmate asked him not to go, to which the deceased replied that it was not dangerous. The question of contributory negligence is ordinarily one of fact for the jury which must be determined from all the facts and circumstances in the case. It becomes a question of law only when it can be said that all reasonable minds will agree on a consideration of all the evidence that there is no evidence tending to prove due care. The evidence in this case together with the common law presumption which pertains as to a boy under 14 years of age justified the submitting to the jury one question of the contributory negligence of the deceased.

Defendant further contends that there is no evidence tending to prove due care by next of kin. The next of kin were the father, mother, a sister 16 years of age, two brothers and a sister under five years of age. The allegation of the pleadings in reference to the due care of the next of kin is ''and that his parents who were the only persons charged with his care, custody and control were at all times in the exercise of ordinary care for his safety.'' The father and mother were the only persons of the next of kin that were charged in caring for and protecting the deceased from accidental injuries.

In *Holden v. Schley*, 355 Ill. 545, the court was considering a question of pleading of due care as applied

to an adult and after reviewing many of the former decisions said, "Many other cases will be found upon an examination of the subject, but it will be learned that in each of them the case either involves an infant, which is necessarily under the control of its parents and for which control the parents are responsible, or else it appears from the pleadings or the proof in the case that the negligence of an adult next of kin directly contributed to the death in question." In further discussion of the question on page 549, the court said, "The declaration in this case showed the deceased to be an adult, leaving a wife and son surviving him. It shows on its face that the driver of the car was not one of his next of kin. Proof of the facts stated in the declaration—i. e., that the deceased himself and the driver of the car with whom he was riding, not being one of his next of kin, were in the exercise of due care and caution for his safety and that the accident resulted by reason of the negligence of the defendants or some of them—would have entitled the plaintiff to a verdict and judgment. No further proof could have been required of her, although the defendants might have successfully defended by introducing affirmative proof to show that some one of the next of kin was in fact guilty of negligence which contributed to or caused the injury."

It is our conclusion that since the contributory negligence of a next of kin of an adult deceased person is an affirmative defense which need not be pleaded or proven by the plaintiff, that it would follow that the contributory negligence of the next of kin who are themselves minors and not charged with the care of deceased would be an affirmative defense and need not be pleaded or proven by the plaintiff.

Upon the question of contributory negligence of the parents, there is evidence to the effect that the deceased was at the home 30 minutes before the accident

occurred and that they were serving ice cream to the guests, all of which would be interesting to a 12-year-old boy and conducive to keeping him in their immediate presence. We cannot say as a matter of law that the fact that the child while engaged in innocent play with his companion on the lawn and in the public highway in an unguarded moment went down the road an eighth of a mile to the substation would be such negligence as to bar plaintiff's right of recovery. There was no error in overruling defendant's motion for a directed verdict.

Defendant excepted to that part of the instructions which told the jury that a boy of the age of plaintiff's intestate is only required to exercise that degree of caution that a boy of his age, intelligence, capacity and experience would exercise under the same or similar circumstances, the objection being that the instruction was abstract and made no connection with the case and did not refer to the care required of him for his own safety. There were other instructions that told the jury that in passing upon the question of the contributory negligence of the plaintiff, they should take into consideration his age, experience and knowledge of electricity and from these they were to determine whether he knew and understood the danger of electricity and if they found from the evidence that he did know and appreciate the dangers of electricity at the time of the accident, then the verdict should be for the defendant. Under these instructions, the jury could not have been misled by the giving of the abstract instruction complained of.

Exception was taken to the instruction on assessing damages which told the jury that if from the evidence and instructions they found the issues for the plaintiff, then in assessing damages they would not be limited to the pecuniary value of the services of Maynard Uhls to his next of kin until he should have arrived at

the age of 21, but the jury may consider the pecuniary benefit which the next of kin may have derived from said deceased had he not been killed at any age of his life, the criticism being that the instruction did not limit the jury to the evidence. This instruction in the same form was given and approved in *United States Brewing Co. v. Stoltenberg,* 211 Ill. 531; *Lichtenstein v. Fish Furniture Co.,* 272 Ill. 191. The rule announced in the instruction has been approved in the following cases: *North Chicago St. R. Co. v. Johnson,* 205 Ill. 32; *Carlin v. Deahl,* 172 Ill. App. 197; *Grayhek v. Stern,* 154 Ill. App. 385; *Mugaviro v. Chicago, B. & Q. R. Co.,* 239 Ill. App. 544. Defendant relies upon *Muren Coal & Ice Co. v. Howell,* 204 Ill. 515, and *Fowler v. C. & E. I. R. Co.,* 234 Ill. 619, but an examination of the instructions under consideration in those cases discloses that the instruction was as to amount of damages and the court there held that the instruction was erroneous in that the jury was not limited to the evidence as to the amount. The instruction under consideration is not solely as to the amount but is the announcement of a rule as to the period of time that the jury can take into consideration in fixing a pecuniary value of the services of the deceased.

Defendants tendered suggestions to the court as to certain subjects upon which it wished the jury to be instructed. We have examined the suggestions tendered and the instructions given and find that the court in its narration as to the law fully and fairly instructed the jury and in so doing adopted the material principles embodied in defendant's suggestions. There was no reversible error in the instructions.

Defendant requested the giving of six special interrogatories. The court gave three and the court's refusal to give the other three is assigned as error. The three interrogatories given asked for a yes or no verdict on the following: "Could the defendant acting as

a reasonable person foresee or anticipate that a boy of the age and experience of deceased would be likely to climb one of its poles at the substation; Was the deceased in climbing the pole exercising the care and caution for his own safety that other boys of his age and experience would have exercised under the same or similar circumstances; Were the parents of deceased in the exercise of due care for his safety?'' All were answered in the affirmative. The refused interrogatories asked for a yes or no verdict on the questions whether the appliances and equipment were so constructed and situated as to attract and allure the deceased beyond his power of resistance; did deceased have sufficient experience and knowledge to know and appreciate danger from electricity and were the appliances on the property of the defendant. The three interrogatories given covered the ultimate issues of fact that the jury was to determine and each of them were answered in accord with their general verdict and the court's ruling against the other three is approved.

Defendant propounded the following question to two of its witnesses, both of whom were minors, ''Describe to the jury any impulse or feeling, if any, that you might have had at any time you would pass by this substation.'' Objection was sustained and the court's ruling is assigned as error. It would have been proper to have asked the witness if as he passed the substation did he go over to it or about it. The question asked for a description of the witness's impulses or feelings as he passed the substation. The impulse or feeling that the witness may have had could not be material. Objection was properly sustained.

Complaint is made of a statement made by plaintiff's attorney in his argument to the jury. The court sustained the objection to it. The substance of the statement was that the case had been instituted against two

defendants and that the court had directed a verdict as to one of the defendants but that the court saw fit to allow the case to continue as to this defendant. The statement should not have included any reference to the court's action in sustaining the case against the defendant but we do not regard the statement as of such prejudicial nature to require a reversal.

Finding no reversible error in the record, the judgment of the circuit court is affirmed.

*Judgment affirmed.*