NELLIE IRENE MARSHALL *vs.* MARGARET J. MARSHALL,
   Defendant in Error.—(MELVIN T. MARSHALL, and
   EMMA J. FINGER, Plaintiffs in Error.)

*Opinion filed December 21, 1911.*

1. PARTITION—*purpose of statute authorizing sale of lands, including life estate therein.* The purpose of sections 32 and 34 of the Partition act in authorizing a sale of all estate in .the land with the assent of the person entitled to an estate of dower and homestead or for life or years, is to have the fund arising from the sale take the place of the land itself.

2. SAME—*earning power of proceeds of sale is the basis for computing value of life interest.* After a sale of land under sections.32 and 34 of the Partition act, with the assent of the person having a life estate in the land, such person is entitled to the full earning power of the proceeds of the sale; and the earning power of the proceeds, and not the rental value of the land, is the proper basis for computing the present value of such estate.

3. SAME—*statute does not point out method of computing present worth of homestead and dower.* The Partition act does not point out the method of computing the present worth of homestead and dower, and in the absence of statutory regulation on the subject recourse must be had to the standard and ᴠrecognized mortality tables, with such supplementary proof as is competent.

4. SAME—*standard mortality tables are admissible to aid in determining value of life estate.* To aid in determining the value of a life estate the standard mortality tables, and the computations of experts based upon such tables, are admissible in evidence, in connection with testimony as to the age and health of the life tenant and the value of the land.

5. SAME—*rule for determining value of life estate where Carlisle table is used to determine expectancy.* Where the expectancy of life of a life tenant is determined by the court from the Carlisle table, the court, in the absence of expert testimony showing how a life annuity should be computed from the Carlisle table, should follow the standard annuity table compiled from the Carlisle table, and not treat the annual earning power ·of the proceeds of the sale as an annuity certain for the period of expectancy.

6. SAME—*value of life estate should not be calculated at compound interest.* It is error for the court, after ascertaining the expectancy, to calculate the value of the life estate at compound

interest, as this calculation proceeds upon the theory that interest is paid the moment it is due and is instantly loaned out, which is not commonly true, and the method is therefore unfair to the remainder-men.

Writ of ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Woodford county; the Hon. GEORGE W. PATTON, Judge, presiding.

ELLWOOD & MEEK, for plaintiffs in error.

E. J. RILEY, and BARNES & MAGOON, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Solomon R. Marshall died intestate in 1891, seized of real estate in Woodford county. He left surviving him his widow, Margaret J. Marshall, defendant in error, and two sets of children,—three by defendant in error, and Melvin T. Marshall, Flora A. Schirer, Emma J. Finger and Florence Chapple by a former wife. Shortly after his death the children by his first wife instituted proceedings to partition the real estate and assign homestead and dower to Margaret J. Marshall. In that proceeding one and three-quarters acres of the real estate was assigned to defendant in error for her homestead and forty-eight and one-quarter acres assigned for her dower. These lands so assigned were contiguous and formed one tract òf fifty acres. On October 30, 1908, Nellie Irene Marshall, one of the children of Solomon R. Marshall, filed her bill to partition the fifty acres so assigned to her mother as homestead and dower, subject to said estates. To this bill defendant in error and all the other children of Solomon R. Marshall were made defendants. Commissioners were duly appointed to partition the land, reported it indivisible, and appraised it at $200 per acre. Margaret J. Mashall thereupon filed her as-

sent in writing to the sale of the premises free of her life estate. One of the children, Solomon R. Marshall, being a minor, the court found that it would be to his interest to. sell the premises free of his homestead estate. The premises were sold for $10,750. The cause was referred to the master to ascertain the value of the life estate of Margaret J. Marshall and of the homestead estate of the minor. The master reported, finding that Mrs. Marshall was fifty-seven years of age, and that the present value of the life estate was $2442.65, based on the rental value of the land. Mrs. Marshall filed exceptions to the master's report, which were sustained, and a decree was entered finding that Margaret J. Marshall was fifty-seven years of age, and had an expectancy of life, based on the Carlisle mortality table, of sixteen years; that the value of her life estate in the land· sold, based upon said life table, is $5829.31; that she was entitled to receive such sum in satisfaction and extinguishment of her life estate in the premises, and decreeing payment to her accordingly. The decree also fixed the homestead estate of the minor at $10, and after directing those payments to be made, ordered distribution of the residue according to the interests of the parties. From this decree Melvin T. Marshall and Emma J. Finger perfected an appeal to the Appellate Court for the Second District, where the decree was affirmed. The judgment of the Appellate Court is brought here for review by writ of *certiorari*.

Upon the hearing before the master it was shown that at the time these proceedings were had the land was rented for five dollars per acre, and that $250 per year was the rental value of the land. It is first insisted on the part of plaintiffs in error that the value of the life estate of defendant in error should be determined upon the basis of the rental value of the land and not upon the interest-earning power of the proceeds of the sale. Section 32 of the Partition act provides that in case of sale of lands the court may, with the assent of the person entitled to an estate in

dower, or by the curtesy, or for life or for years, or of homestead, in the whole or any part of the premises, who is a party to the suit, sell such estate with the rest. Section 34 provides that when any such interest is sold, the value thereof may be ascertained and paid over in gross, or the proper proportion of the funds invested and the income paid over to the parties entitled thereto during the continuance of the estate. The evident purpose of these two sections is to have the fund arising from the sale take the place of the real estate when a sale has been assented to by the party entitled to an estate for life or for years. Any other construction would be strained and unreasonable. After a sale under the provisions of this statute a person having a life estate in the realty would have the same interest in the proceeds of the sale that he had in the land and would be entitled to the full earning power of the fund during his lifetime. The fund, for every purpose, takes the place of the real estate, and each party has the same interest in the fund that he had in the realty. By using the earning power of the proceeds of the sale instead of the rental value of the land as the basis for computing the interest of defendant in error the court pursued the proper method.

It is next contended that if this was the proper method, the method of computation was not correct. The Partition act does not point out any method by which the present worth of a dower or homestead estate shall be computed. It simply states that when such interest is sold the value of the same may be ascertained and paid over in gross. Any method of ascertaining the present worth of a dower or homestead interest must necessarily be an arbitrary one, as it is impossible to determine when any given individual will die. In the absence of statutory regulation of this subject, recourse must necessarily be had to the standard and recognized mortality tables, together with such supplementary proof as is competent.

On the hearing before the master complainant offered in evidence the Wigglesworth and Carlisle tables of mortality, also the Combined or Seventeen Offices Experience Table, the American Experience Table, the Thirty Offices Experience Table, the Farr No. 3 Table and the Northampton Table. The decree states that the Carlisle table was followed in computing the present value of Mrs. Marshall's life estate. No objection was made to the introduction of any of these tables, and it is not contended here by plaintiffs in error that the court erred in following the Carlisle table. No expert proof was offered showing how computations should be made, based upon mortality tables, to determine the present value of an annuity for life. The only proof, in addition to the introduction of the tables themselves, which had any bearing upon the amount Mrs. Marshall should receive in cash, was that she was fifty-seven years of age and in good health, and that the prevailing rate of interest on real estate loans in Woodford county at that time was five per cent. We have repeatedly held that to aid in determining the value of a life estate the standard mortality tables, and the computations of experts based upon such tables, are admissible in evidence, in connection with testimony as to the age and health of the life tenant and the value of the land. *City of Joliet* v. *Blower,* 155 Ill. 414; *Henderson* v. *Harness,* 184 id. 520; *Knight* v. *Collings,* 227 id. 348; *Winn* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 239 id. 132.

The Supreme Court of the United States has said that there is high authority for the proposition that courts can take judicial notice of the Carlisle table and can use it for estimating the probable length of life, whether the table was introduced in evidence or not. (*City of Lincoln* v. *Powers,* 151 U. S. 436.) The contention of the plaintiffs in error is, not that the court erred in following the Carlisle table, but that the computation based upon that table, by which it was found that the present value of the life

estate is $5829.31, was improper. The court found from the Carlisle table that Mrs. Marshall had an expectancy of sixteen years, and it is apparent that in arriving at the amount allowed the widow and minor in gross, the method pursued was to take $537.50, which is five per cent of $10,750, and treat that sum as an annuity certain for sixteen years; then by the application of arithmetical rules in the computation the result named was determined. Annuity tables have been computed from each of the standard mortality tables, whereby the present value of an annuity of one dollar on a single life at every age is shown according to the table of mortality upon which the computation is made. In some annuity tables the amount thus arrived at is referred to as the number of years' purchase the annuity is worth. These computations have been made by skilled and competent persons, and the tables thus compiled are regarded as a part of the mortality tables from which they have, respectively, been deduced. In compiling these tables the expectancy of life is not used as the basis, but the results are arrived at by finding the average chance of death or life in any year up to the extremity of human life, and from that result the present value of an annuity of one dollar at a given age and rate per cent is computed. By this method of computation the law of averages is followed throughout. From the standard annuity table according to the Carlisle table of mortality the present value of an annuity of one dollar on the life of a person of the age of fifty-seven years, at five per cent, is $9.771, which is a result considerably different from that arrived at by the chancellor. In the absence of any testimony by persons skilled in such matters showing how a life annuity should be computed from the Carlisle table of mortality at the age of fifty-seven years, the court should have followed the standard annuity table compiled according to the Carlisle table of mortality. By following that table, the value of a life estate for a person fifty-seven years of age, at five

per cent, is found to be $5251.91. In any event, the method of computation pursued by the chancellor was erroneous. After having ascertained the expectancy, the value of the life estate was calculated at compound interest. This calculation proceeded upon the theory that the interest is paid the moment it is due and is instantly loaned out. Common experience teaches us that this rarely ever occurs, and if this method of computation is a correct one, a proper allowance should be made for the inability always to make an immediate re-investment. It is true that the amount allowed the remainder-men, after deducting the value of the life estate as found by the chancellor, is a sum sufficient, when put out at compound interest for sixteen years, at five per cent, with its earnings, to make the total of $10,750, the proceeds of the sale. But as above pointed out, assuming that the expectancy was correctly placed at sixteen years, the method of computation is not fair to the remainder-men.

No objection is made by plaintiffs in error to the use of the rate of five per cent in making the computation, except that they contend that if the earning power of the fund is to be used as a basis, such a rate per cent should be used as would produce a revenue of $250 per year, or an amount equal to the rental value of the real estate, and the basis of that contention is, that the plaintiffs in error should not be prejudiced by the use of any method which presumes this fund would earn more than the land itself. That contention has been disposed of.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded to the circuit court, with directions to enter a decree finding the value of the life estate to be $5251.91, and of that sum to award $5241.91 to Margaret J. Marshall and $10 to Solomon R. Marshall, the minor.

*Reversed and remanded, with directions.*