Willie Bee Hann, Administratrix of Estate of Melvin Hann, Deceased, Plaintiff, v. Raymond Brooks and Ramsford Huston, Defendants.

Gen. No. 10,106.

538

Opinion filed May 26, 1947. Rehearing denied June 23, 1947. Released for publication June 23, 1947.

HOLLERICH & HURLEY, of La Salle, for appellants.

SIDNEY S. DEUTSCH and STEWART R. WINSTEIN, both of Rock Island, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

The plaintiff, Willie Bee Hann, administratrix of the estate of Melvin Hann, deceased, filed this suit in the circuit court of La Salle county, Illinois under the Injuries Act against the defendants, Raymond Brooks and Ramsford Huston.

The jury returned a verdict in favor of the plaintiff and against both defendants for $10,000, and defend-

ants' motion for judgment notwithstanding the verdict and motion for a new trial were overruled and judgment entered on the verdict. Both defendants have appealed from the judgment.

Plaintiff's complaint alleged that the defendant Raymond Brooks was driving an automobile as the agent and servant of the defendant Ramsford Huston, and the negligence charged was the operation of this automobile on the left half of the roadway contrary to sec. 54, and at an excessive rate of speed contrary to sec. 49 of the Uniform Act Regulating Traffic on Highways [Ill. Rev. Stat. 1945, ch. 95½, pars. 146, 151; Jones Ill. Stats. Ann. 85.178, 85.183].

The deceased was 29 years of age and was employed by Engler & Ferris of Maysville, Iowa as a truck driver. On August 12, 1943, he was driving a tractor trailer truck for his employer enroute to Chicago, the trailer of the truck then being loaded with hogs. About 10 p. m. on that date while driving this truck in an easterly direction on U. S. Route No. 34 in La Salle county, about 1½ miles west of Mendota, Illinois, the truck collided with an automobile then being driven by the defendant Raymond Brooks and owned by defendant Ramsford Huston. The truck overturned and caught fire. The deceased, Melvin Hann, was injured and seriously burned. It was stipulated that the injuries he sustained caused his death the next morning. The highway runs due east and west and is level for a great distance each way from the scene of the accident.

Plaintiff's evidence consisted of exhibits, the testimony of the fire chief of Mendota, two highway maintenance men, two men having knowledge of deceased's driving habits, the widow and defendant Raymond Brooks, who was called by the plaintiff as an adverse witness under sec. 60 of the Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060].

Alvin C. Kuhrt testified that he was a building contractor and chief of the volunteer fire department of the City of Mendota, and that he arrived on the scene shortly after the accident. He found the defendants' automobile just off the north edge of the pavement 300 feet west of the point of impact which was indicated by "marks on the pavement" and was permitted to testify without objection "I knew where the impact took place by the marks on the pavement." The trailer and tractor were also north of the pavement. The pavement was not very wet although there was a light drizzle when he was there.

John Humphrey and R. M. Hunton, two state highway maintenance men, went to the scene of the accident about 7:30 a. m. the following morning to clear the highway. The testimony of these men was substantially the same. They testified they found a skid mark on the pavement that started at the black line and went diagonally for a short distance to the south of the black line and then parallel with the black line for approximately 100 feet on the south side of this line where they found glass and gasoline in the center of the pavement. From that point on there was a mark apparently made by a wheel rim of the defendants' automobile which ran for another 100 feet diagonally to the shoulder on the north side of the pavement. They both testified without objection that these skid marks were made by the automobile.

The plaintiff called two witnesses (Bedford Smith and Thomas W. Bedwell) who were personally acquainted with the deceased, and who were also truck drivers. They testified at length that they had ridden with the deceased while he was operating a truck; that they had often seen deceased operating the truck in question over this route; and that deceased was a sober, strong and healthy man, and a careful and safe driver, and at all times observed the rules of the road and drove at a safe rate of speed. No objection was made to the competency of their testimony when they

testified as to the habits and due care on the part of the deceased, nor was there any mention made by the defendants that there was an eyewitness to this occurrence competent to testify.

The plaintiff, Willie Bee Hann, testified in her own behalf that she was married to the deceased in March 1940; that they were residing together as husband and wife; and that he was 29 years old at the time of his death. By her testimony it was established that the deceased was survived by his widow and three children of the ages of four, three and two years, the last child being born after the death of plaintiff's intestate. She further testified, without objection, that the deceased was six feet tall, weighed about 170 pounds, was muscular, was not sick at any time after they were married, worked steadily, had a public school education, didn't gamble or get drunk, and that he was a thrifty, industrious man; that deceased had worked as a truck driver for Engler & Ferris for about a year and a half; that his earnings were $45 per week and expenses; that prior to his employment by Engler & Ferris he drove a tractor trailer for Pioneer Motor Service from Rock Island to Chicago; and that prior to that time he was employed as a mechanic in Davenport, Iowa. She further testified that at the time of the accident he was driving a GMC Conventional truck. No objections were made at the trial to the testimony of Mrs. Hann, and its competency has not been questioned in this court.

The plaintiff also offered three photographs of the wrecked tractor trailer made the day following the accident and the American Table of Mortality taken from a manual of the Guardian Life Insurance Company. This last exhibit was admitted over the objection of the defendants on the ground it was not a recognized table of mortality.

The plaintiff called the defendant Raymond Brooks as an adverse witness under sec. 60 of the Practice Act, who was cross-examined as follows:

"Q. Your name is Raymond Brooks?

"A. Yes.

"Q. Mr. Brooks, were you, on or about the evening of August 12th, 1943 driving a 1941 Pontiac automobile that belonged to the defendant, Ramsford Huston?

"A. Yes.

"Q. And you were driving that car with his permission?

"A. Yes.

"Q. And you were driving that car in the direction of the home of Ramsford Huston?

"A. That is correct.

"Q. Were you driving this 1941 Pontiac automobile westerly on U. S. Route Number 34 at or about ten o'clock p. m. on the evening of August 12 at a point about one mile west of Mendota, Illinois?

"A. Between nine-thirty and ten o'clock, that's right."

Whereupon the Presiding Judge said to plaintiff's counsel: "You have gone too far. We had a discussion about this matter and agreed what questions you could ask and have answered. You've gone beyond that; you didn't keep your agreement with the court."

Previous to the calling of the defendant Brooks as an adverse witness the plaintiff had called the defendant Huston as an adverse witness under sec. 60, whereupon it was stipulated that Huston was the owner of the automobile involved in this suit and the defendant Huston was withdrawn and the defendant Brooks then called under sec. 60.

Since the defendants urge that there is no evidence to prove due care on the part of the plaintiff's intestate, and no credible evidence which proves or tends to prove negligence on the part of the defendants, and that this judgment be reversed without remanding or reversed with instructions to enter judgment in favor

of the defendants notwithstanding the verdict, we have set out plaintiff's evidence at some length.

The defendants having assigned no error that the verdict is contrary to the manifest weight of the evidence, we deem it unnecessary to set out defendants' evidence except insofar as its competency or incompetency is questioned. Suffice to say that the defendant Raymond Brooks was called to testify on behalf of the defendants and plaintiff's objection to his competency under sec. 2 of the Evidence Act [Ill. Rev. Stat. 1945, ch. 51, par. 2; Jones Ill. Stats. Ann. 107.068] was sustained, whereupon defendants made their offer of proof by this witness, contending he was competent by reason of the testimony given by him when called as an adverse witness under sec. 60, to which offer, plaintiff's objections were likewise sustained.

The defendants offered in evidence photographs showing the highway at the scene of the wreck and the defendant Huston's automobile the day following the accident. The photograph of the automobile shows no damage to the front bumper, grill or hood but the left front headlight broken, the left front fender and left doors and running board and the left rear fender extensively damaged, the left front tire entirely deflated with visible rim cuts, and an entire absence of any tire on the left rear wheel and the rims of this wheel bent and distorted.

The defendants called the wife of the defendant Huston as an occurrence witness, and the plaintiff's objection to her competency by reason of sec. 2 of the Evidence Act was sustained. The defendants then called, as an occurrence witness, Louise Sunkin, who at the time of the accident was the wife of defendant Raymond Brooks, but who had, subsequent to the accident but before the trial of this cause, obtained a divorce from this defendant. The plaintiff interposed a timely objection to the competency of the testimony of this witness on the ground that when the accident occurred

she was an interested witness. The trial court overruled the plaintiff's objection and directed counsel to proceed. This witness then testified that she was riding in the front seat of the automobile being driven by her husband, Raymond Brooks, and gave her version of what occurred before, at and subsequent to the accident.

Immediately following the testimony of Mrs. Sunkin, the defendants made a motion to strike the testimony of plaintiff's witnesses Smith and Bedwell, who had testified as to the habits and due care of plaintiff's intestate, and as grounds for such motion relied upon the testimony of the divorced wife of the defendant Raymond Brooks as an eyewitness to the accident. Over the objection of the plaintiff, the court sustained the motion to strike the evidence of plaintiff's witnesses Smith and Bedwell. For aught that appears in the abstract of record in this case, no instruction was ever given to the jury by the trial judge to disregard the testimony of these two witnesses, and an examination of the report of proceedings discloses that the jury was not present at the time of the judge's ruling on the motion to strike this evidence.

The only errors assigned and argued by the defendants for the reversal of this judgment are: (1) There is no evidence in the record to prove negligence on the part of the defendants or either of them; (2) there is no evidence to prove due care on the part of plaintiff's intestate; (3) the defendant Raymond Brooks should have been permitted to testify in his own behalf; (4) the American Table of Mortality offered by the plaintiff was admitted without a proper foundation having been laid; and (5) the giving of seven of plaintiff's instructions.

This court is urged to reverse the judgment without remanding or in the alternative to reverse the judgment and remand the cause with directions to enter judgment in favor of the defendants notwithstanding

the verdict, and the defendants present argument at length that such a reversal is required by reason of absence of proof under points (1) and (2) above set out.

The rule of law authorizing this court to reverse the judgment notwithstanding the verdict is firmly fixed by the decisions of the Appellate and Supreme Courts of this State and requires no repetition here. We are of the opinion, considering the facts and circumstances in this case in the light of this well known rule, there was sufficient evidence to sustain the verdict of the jury on the question of defendants' negligence.

Whether there is sufficient evidence in this case to prove due care on the part of plaintiff's intestate presents a more serious question and requires analysis and determination of the competent evidence in this cause on that question. To decide this question, it is important that we first determine whether Raymond Brooks should have been allowed to testify in his own behalf, and whether Louise Sunkin was a competent eyewitness when called to testify on behalf of the defendants.

It is conceded by the parties in this case that there were no eyewitnesses to this accident except the defendants and their respective wives. In a suit brought by an administrator under the Injuries Act, a defendant is not a competent witness in his own behalf by reason of sec. 2 of the Evidence Act unless such defendant becomes competent by reason of the plaintiff's offering evidence that removes this disqualification. Neither is the wife of such defendant a competent witness when called by the defendant. In this case the defendants Brooks and Huston and their respective wives were not competent witnesses to anything occurring before the death of plaintiff's intestate unless some one of them became competent by reason of some action of the plaintiff. It is not argued that

either the defendant Huston or his wife was a competent witness; in fact, Huston was not called as an eyewitness. Defendants contend, however, that the defendant Raymond Brooks became competent because of his testimony when called by plaintiff as an adverse witness, and that Louise Sunkin, his former. wife, became competent to testify as an eyewitness because of her divorce from this defendant.

An examination of the questions asked Raymond Brooks when called by the plaintiff reveals that the questions touch solely upon his agency to the codefendant Huston and do not touch upon the issues of negligence of the defendants or the due care of plaintiff's intestate. In *Garrus v. Davis,* 234 Ill. 326, decided by the Supreme Court in 1908, the rule is laid down that/where a witness is called by an adverse party to prove a particular fact, the disqualification of sec. 2 of the Evidence Act is not thereby removed so as to make him a competent witness to testify upon all the issues in the case./ This rule was applied and followed in the case of *Blumb v. Getz,* 294 Ill. App. 432 after the Civil Practice Act which embraces sec. 60 became effective. The defendant in the *Blumb* case was called as an adverse witness under circumstances identical with the circumstances in this case, and his examination under sec. 60 was confined solely to the question of agency as between the codefendants, and no proof of facts or occurrences connected with the injury or death, or on the issues of due care and negligence having been made from the defendant's testimony, the court held that the bar of the statute was not lifted. We hold that the testimony of Raymond Brooks as an eyewitness was properly excluded by the trial court.

The further question then presents itself as to whether Louise Sunkin, the former wife of Raymond Brooks, was a competent eyewitness for the defendants. Our courts have held in many cases

that where a husband is disqualified by reason of interest, his wife is also incompetent. (*Heineman v. Hermann,* 385 Ill. 191; *Peters v. Peters,* 376 Ill. 237; *Gillam v. Wright,* 246 Ill. 398; *Crane v. Crane,* 81 Ill. 165.) Such incompetency continues after the marriage relation is dissolved, either by death or divorce. (*Heineman v. Hermann, supra; Zimmer v. Zimmer,* 298 Ill. 586; *Monaghan v. Green,* 265 Ill. 233; *Geer v. Goudy,* 174 Ill. 514.) This rule was not changed by the amendment of 1935 to sec. 5 of the Evidence Act [Ill. Rev. Stat. 1945, ch. 51, par. 5; Jones Ill. Stats. Ann. 107.071]. (*In re Estate of Teehan,* 287 Ill. App. 58; *Heineman v. Hermann, supra.*) Louise Sunkin, who was the wife of the defendant Brooks at the time of this accident, was not a competent witness on behalf of the defendants.

The rule is well settled in this State that when there is no eyewitness to an accident who is competent to testify to the facts which caused the accident in a wrongful death action, testimony of the habits and due care on the part of deceased is properly admissible in evidence. (*Nordman v. Carlson,* 291 Ill. App. 438.) There being no eyewitness to this accident competent to testify, the trial court erred in sustaining defendants' motion to strike the testimony of plaintiff's witnesses, Smith and Bedwell, whose testimony made a prima facie case of the due care of plaintiff's intestate.

Moreover, there was other competent evidence on the question of due care of the deceased which we must consider, such as the physical facts following the accident, the place of impact, the skid marks on the pavement and the photographs of the vehicles. The Supreme Court said in the case of *Young v. Patrick,* 323 Ill. 200, at page 202:

"The skid marks, positively identified by the witness as being the marks made by the rear wheels of the car involved, tend to establish excessive speed, unless

it be true that a car of that character, while traveling at the authorized rate of speed, could not be stopped in less than 40 feet. The evidence, therefore, was competent, not to show the exact speed of this car but to show whether or not a car of that character, going at the authorized rate of speed, could be stopped in less space than was apparently required to stop this car. This is not an assumption but positive proof. It is not such evidence as to establish an inference but tends to establish a fact.''

Due care on the part of the deceased may be proved in the same manner as negligence and by circumstantial as well as by direct evidence. (*Chicago, B. & Q. Ry. Co. v. Gregory,* 58 Ill. 272; *Hellwig v. Lomelino,* 309 Ill. App. 369.) When all of the evidence in this case is considered, with all the reasonable inferences to be drawn therefrom most favorable to the plaintiff, it was not error for the trial judge to refuse to direct a verdict for the defendants and to deny defendants' motion for judgment notwithstanding the verdict. There was sufficient circumstantial evidence of deceased's due care to make the question one of fact for the jury and not of law.

The plaintiff offered in evidence the American Table of Mortality as published in the rate book of the Guardian Life Insurance Company. The defendants objected to the admission of this exhibit on the ground that it is not a recognized table of mortality, and that there was no foundation laid for its admission. No complaint is made in this court that this is not a recognized table, but it is argued at length that it was admitted in evidence without a proper foundation having been laid therefor.

The rule of law recognized in Illinois is well stated under the chapter on Evidence in 22 Corpus Juris, par. 1129:

''Mortality and annuity tables are admissible in evidence to show the expectancy of human life, although

they are not, of course, conclusive on the subject. Where such tables are shown to be of standard authority, they may be received without any further proof of their authenticity and correctness, as under such circumstances the court will, it is said, take judicial notice of their genuineness and authoritativeness. A showing that the tables are used by reputable life insurance companies is sufficient to establish their status as standard authorities. Among tables which have been accepted and admitted as standard without proof of accuracy may be mentioned the Carlisle tables, the American tables, the Northampton tables, the Wigglesworth tables and the Flatchcraft insurance manual.''

Recognized mortality tables have been admitted in evidence in Illinois without proof of authenticity or correctness for years. (*Marshall v. Marshall,* 252 Ill. 568; *Winn v. Cleveland, C., C. & St. L. Ry. Co.,* 239 Ill. 132.) The legislature of our State recognized the American tables in drafting the Insurance Code. Ill. Rev. Stat. ch. 73, par. 835 (2a), 905, 909 [Jones Ill. Stats. Ann. 66.898, subpar. (2a), 66.968, 66.972]. The Conveyance Act, ch. 30, par. 173 (2) [Jones Ill. Stats. Ann. 135.53, subpar. (2)], require the use of this table of mortality. It is a matter of common knowledge that the Guardian Life Insurance Company is a recognized life insurance company doing business in Illinois. The courts will take judicial notice that insurance companies must be licensed in order to transact business in Illinois. The authenticity of this exhibit has not been questioned and we think its admission in evidence was proper. Moreover, the defendants are not now in any position to complain. They do not urge that the verdict in this case is excessive. The jury from its own knowledge of human life could have inferred that a man 29 years old and in good health, making $45 per week would ordinarily live long enough to contribute $10,000 to his four dependents.

Defendants finally complain that prejudicial errors were committed in giving certain of plaintiff's instructions. It is contended that peremptory instructions Nos. 9, 10, and 13, given on behalf of plaintiff, charged the jury that a violation of a statute was negligence *per se*. We are not of that opinion. These instructions charged the jury that if the defendants committed certain acts and "that in so doing they were guilty of negligence" their verdict should be for the plaintiff. An instruction similar to plaintiff's instructions 9, 10° and 13 was approved in *Kuzminski v. Waser*, 314 Ill. App. 438. In the cases of *Burke v. Zwick*, 299 Ill. App. 558 and *Rasmussen v. Wiley*, 312 Ill. App. 404, chiefly relied on by defendants in support of their contention, the instructions are not set out in the opinions, but from what is said in these opinions it is clear that the instructions summarily charged the jury that a violation of a statute was negligence. Further complaint is made of these instructions for the reason that they do not require the jury to find that decedent's beneficiaries were in the exercise of due care at the time of the accident. Such proof of due care on the part of the beneficiaries is not required where, as in this case, the deceased was an adult and the next of kin had nothing to do with the accidental death. (*Holden v. Schley*, 355 Ill. 545.) It was not error to omit such charge in these instructions. It is further contended that instruction No. 11, which charged the jury that if they believed that deceased was in the exercise of ordinary care for his own safety "at the time of the accident," omitting the charge of due care "prior to the accident," constituted reversible error. In the cases of *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544, and *Knox v. American Rolling Mill Corp.*, 236 Ill. 437, an instruction similar to the one here was questioned by the defendants. It was held in each of those cases that the phrase "at the time of the injury" did not cause the jury to misunderstand the

time intended. The same reasoning should be applied to the instruction in this case.

It is contended by defendants that plaintiff's instructions Nos. 11 and 12 are bad for the reason that they contain the phrase "as charged in the complaint," and that the jury, therefore, would have to refer to the complaint for the purpose of ascertaining whether the defendants were guilty of the negligence charged against them. It has been frequently held by our courts of review that it is the province of the court to define the issues to the jury in the instructions without referring the jury to the pleadings to ascertain what they are. (*Stivers v. Black & Co.*, 315 Ill. App. 38, and cases there cited.) However, it has been further held that an instruction referring the jury to the complaint for determination of the charges of negligence does not necessarily require reversal where, as here, other given instructions effectively define the issues to the jury. (*Wise v. Kuehne Mfg. Co.*, 322 Ill. App. 26.) Defendants' given instruction No. 13 specifically set out the charges in the complaint. While it is true that plaintiff's instruction No. 11 is, in effect, a peremptory instruction as contended by defendants, it does not omit a fact or circumstance essential to recovery as was true of the instruction considered in *Hanson v. Trust Co. of Chicago*, 380 Ill. 194. We hold that plaintiff's instructions referring to the complaint were cured by instructions given on behalf of the defendants and do not constitute reversible error.

Objection is made to instruction No. 14 as to damages. An instruction in almost identical language was approved in an opinion written by the late Justice Norman L. Jones in the case of *Mugaviro v. Chicago, B. & Q. Ry. Co.*, 239 Ill. App. 544, and a similar instruction approved by this court in the case of *Franko v. Crosby*, 278 Ill. App. 416. The error complained of is without merit.

It was not error for the court to give plaintiff's instruction No. 7, which was a copy of

sec. 54 of the Uniform Act Regulating Traffic on Highways. The rule in this State is that an instruction given in the language of the statute, which is pertinent to the issues, may be regarded as sufficient, and as early as 1906 in the case of *Ward v. Meredith*, 220 Ill. 66, in an action to recover damages caused by the running of an automobile on a public highway of this State, an instruction substantially in the words of the statute was held proper and approved. This decision of the Supreme Court has never been reversed, and the rule laid down has been followed in numerous cases. Plaintiff's instruction No. 7 was, therefore, properly given.

True it is that the record in this case is not free from error, but after a careful examination of the evidence and the errors assigned, we are of the opinion that the serious errors were committed by or are in favor of the defendants. Finding, as we do, that the jury was warranted in finding the defendants guilty, both under the facts and the law, it is not our province to substitute our judgment for that of the jury, and finding no error sufficient to reverse the judgment in favor of the plaintiff, the judgment should be and is hereby affirmed.

*Affirmed.*