**Icle Luker, Administrator of the Estate of John Burkey Luker, Deceased, Plaintiff-Appellee, v. Contract Steel Carriers, Inc., a Foreign Corporation, Defendant-Appellant.**

**Gen. No. 68–71.**

Third District.

December 16, 1968.

Hupp & Irion, of Ottawa, for appellant.

Berry & O'Conor, of Ottawa, and Reidy, Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee.

ALLOY, P. J.

Icle Luker, as administrator of the estate of John Burkey Luker, deceased, filed a wrongful death action seeking damages as a result of the death of her intestate husband, John Burkey Luker, against Contract Steel Carriers, Inc. The action was the result of a collision of two trucks on Interstate 80 on May 22, 1964. The truck which the decedent John Luker was driving struck the rear of a truck driven by a Frank McCollum, an employee of defendant, Contract Steel Carriers, Inc. McCollum died approximately two years following the accident from other causes and there was, therefore, no testimony in the cause from him. Investigating officers, however, reported the description of events prior to the accident given to them by McCollum. This indicated that McCollum had pulled off Route I 80 at the Utica exit to check his tires as required by company rules. He then pulled back onto I 80 at the Utica entrance and proceeded on west.

The accident occurred ¾ of a mile west of where the Utica entrance blends in with I 80. The grade of the road in this area is downward as it runs west. The truck driven by McCollum was carrying steel and the truck and the load together weighed approximately 70,000 pounds.

John Luker, the deceased husband of the plaintiff administrator, was driving out of Chicago in a cattle truck which was empty. He had met a friend, a Mr. Lansing at the stockyards and they were driving back toward New Windsor, Illinois, in separate trucks yet close enough so they could see each other. Lansing testified that both men lay down and rested for about three hours in Chicago. They left Chicago about 1:30 o'clock a. m. They stopped for breakfast, and stopped again at the intersection of Route 66 and I 80. Luker was in the lead as they turned onto Route I 80 and then, on an upgrade, Lansing passed him. About 2½ miles from the Utica overpass Lansing stopped his truck to check his tires and when Luker came up behind Lansing, Luker slowed down. Lansing waved Luker on through as there was no problem with his tires. Lansing then pulled back on the road and Luker was still within his view. After Luker passed Lansing, Luker had on his right turn signal and pulled into the north lane of Route I 80 going west. Lansing then followed Luker's truck under the Utica overpass and Lansing was about ½ mile behind Luker.

Lansing testified as to what occurred at this moment which was about 4:30 or 4:45 a. m. It is the only direct testimony as to what occurred. He stated: "At the overpass Luker was about a half mile ahead of me. He was then in the right-hand lane. His motion up to that time was straight-on. I at no time saw a unit proceeding westward ahead of Luker. As I was coming down the grade, all of a sudden the trailer lights on Luker's truck went off. It hit me that something had happened. I kind of slowed down. When I got close enough I could see there

was a wreck. I could see all this dust, material laying all over the highway, scattered everyplace. After leaving the overpass the road bends a little to the northwest then it comes back more to the west and it's downhill. The accident was about a mile from the Utica overpass. It is still going downgrade there. The first thing I saw was Luker's unit, the rear of his trailer, clean in the south lane. The tractor was just on the edge of the south lane. The front of the tractor was just a little bit off of the south lane. I saw this as I was pulling up to where the accident was. I then saw the steel truck. I saw it in motion trying to get off on the shoulder. It didn't get off before it came to a halt."

The cab portion of the Luker truck was a total loss and the damage to the McCollum truck was confined to the left rear portion of the truck. Luker's body was thrown from the truck and came to rest to the north side of the pavement. The rear tandem of the trailer was pulled out of the box and the trailer was heaved up. Lansing testified that he noticed some skid marks leading up to the Luker unit, which marks were in a southwest direction from the north lane of Route I 80. He also stated that these skid marks started about 50 feet behind where the Luker unit came to rest after the accident. He also noted that there were black marks on the north lane from what appeared to be the point of impact, and that these marks ran to the McCollum truck. Lansing testified that most of the debris was along the side of Luker's trailer. Lansing testified that Luker's truck had a speed governor which limited Luker's speed to 54 or 55 miles per hour and that in his opinion Luker was traveling 52 to 53 miles per hour at the time of the accident. Lansing also testified that he had observed Luker drive on numerous occasions and that Luker was a really good driver, observing the rules and regulations very well. On cross-examination Lansing testified that as he ap-

300

proached the scene of the accident, he had his lights on high beam and he could observe the Luker truck about 500 feet away. The lights of the Luker truck were then off following the collision, but Lansing testified he could still see the Luker truck. Lansing testified that the lights on the right side of the McCollum truck were on when he arrived but the lights on the left side were off as they were damaged by the accident. Lansing said that if it had not been for the dust created by the accident he could have seen the two trucks about 700 to 800 feet away. Lansing stated that he had no idea as to the movements or actions of the McCollum truck before the accident as he did not see it prior to the accident.

The two police officers who investigated the accident also testified. Trooper Niles was the first on the scene. He found the Luker truck with the cab nose down in the median between the east and west portion of I 80 and the rear of the trailer was in the south lane of westbound I 80. Niles requested McCollum to move his steel carrying truck off the road to avoid a traffic tie-up. Niles testified that he could find no skid marks to indicate that brakes were applied on either vehicle prior to the accident. The debris and marks on the highway started on the north lane and carried over into the south or passing lane according to Niles. Niles testified that he had investigated over 100 accidents and that from his experience he was able to form an opinion as to the point of impact. He testified that in his opinion, the impact occurred in the north or right-hand lane of traffic. In referring to photographs of the accident scene, Niles said the point of impact was in the center of the north lane in what is called the driving lane. On cross-examination he stated that most of the staining, the saturated area, and the black marks were south of the center line. Robert Current, the other officer, told of the position of the two trucks when he arrived, which was after McCollum had moved his truck. Current testified that he had investi-

gated over 200 accidents and from observing the debris, tire marks, and other evidence, he was of the opinion that the point of impact was in the extreme north lane in the westbound lane, in the north half of the highway. He testified as to seeing tire marks in the north lane running into the south lane leading up to where the Luker truck came to rest. He felt the McCollum truck left marks when its springs broke and locked up the rear end. He testified that the oil marks were clearly on the south side of the center line.

The complaint filed by the plaintiff charged the defendant with a number of acts of negligence including failure to keep a lookout, stopping a vehicle on a highway so as to obstruct westbound traffic, defective taillights, turning in front of plaintiff without signaling, failing to yield the right of way, and, also, carelessly operating a vehicle at such slow speed as to impede and obstruct traffic approaching the rear in violation of the statute (1963 Ill Rev Stats, c 95½, § 148, par 51, sub par (a)). Two instructions were given at the request of plaintiff and objected to by the defendant. The instructions were as follows:

> Instruction 15: "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:
>
> > " 'No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation of his vehicle or in compliance with law.' "
>
> Instruction 71: "The plaintiff, as administrator of the estate of John Burkey Luker, deceased, claims that she, as widow, and the lineal next of kin of said decedent, sustained damages while said decedent was

exercising ordinary care and that the defendant was negligent in one or more of the following respects:

" '1. Negligently managed, operated and controlled defendant's motor vehicle so as to cause the motor vehicle being then driven by plaintiff's intestate to run into and strike the motor vehicle of defendant.

" '2. Drove and operated defendant's motor vehicle at such a slow rate of speed so as to impede and block the normal and reasonable movement of traffic approaching from the rear, in violation of Section 148, paragraph 51, subparagraph (a) of Chapter 95½ Illinois Revised Statutes 1963.'

"The plaintiff further claims that one or more of the foregoing was the proximate cause of the damages claimed.

"The defendant denies that it was guilty of negligence in any of the things claimed by plaintiff and denies that the plaintiff's intestate was in the exercise of ordinary care."

Defendant also objected to the court's refusal to give an instruction which said "that the court instructs the jury that it is the duty of all persons operating motor vehicles upon a public highway to keep and maintain a reasonable lookout."

The court refused to direct a verdict for defendant at the close of plaintiff's evidence and again refused to direct a verdict at the close of all the evidence. The case was submitted to the jury which returned a verdict for plaintiff in the sum of $31,211.78. On appeal in this Court, defendant contends (1) that there is no evidence to support the verdict of the jury either as to the alleged

negligence of defendant or as to the matter of due care of plaintiff; (2) that the verdict is against the manifest weight of the evidence; and, also, (3) that the court erred in giving plaintiff's instructions 15 and 17 and in failing to give defendant's instruction 6 referred to.

 Questions of negligence and contributory negligence are ordinarily for the jury (Brichacek v. Hampton, 54 Ill App2d 284, 203 NE2d 737; Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 180 NE2d 347; Larson v. Harris, 38 Ill2d 436, 231 NE2d 421). It is also clear that where direct evidence of negligence or contributory negligence are not available, such negligence may be proven by facts and circumstances from which it may be reasonably inferred (Hann v. Brooks, 331 Ill App 535, 73 NE2d 624; Larson v. Harris, 38 Ill2d 436, 231 NE2d 421).

We note from the record that plaintiff's intestate was a man of good habits, who habitually exercised due care on the road. The evidence showed that he passed under the Utica overpass traveling slightly in excess of 50 miles per hour on a downgrade within a couple of minutes after defendant's steel carrier had entered Interstate 80 on the ramp leading from the overpass on the north side of Interstate 80; that the entry onto the highway was not visible to plaintiff's intestate and that the steel carrier was ahead of plaintiff's intestate on the highway sloping toward the west. The evidence disclosed that about $\frac{8}{10}$ of a mile from the ramp entry, plaintiff's intestate came upon a flatbed carrier which, from the evidence, may have been stopped or moving very slowly; that from the evidence it could have been reasonably deduced that plaintiff's intestate attempted to swing clear to the left on the most southerly lane for westbound traffic or that the carrier had changed its position on the highway immediately before the crash so as to make the move imperative. The evidence could have justified a reasonable conclusion that such attempt on part of

plaintiff's intestate was not successful and that the collision resulted between the front of the tractor-trailer, which plaintiff's intestate was driving, and the left rear corner of the steel carrier with such tremendous force as to throw plaintiff's intestate completely clear from his tractor onto the north shoulder and behind the steel carrier. It caused total destruction of the tractor which he was driving. The truck driven by Luker proceeded to the south side of the highway even though there was no driver guiding it at that time and stopped a short distance from the point of impact.

■ In view of such evidence including photographic exhibits, the physical evidence at the scene of the crash, testimony as to careful driving habits of plaintiff's intestate, the testimony of Lansing and the officers, with the inferences to be drawn therefrom, it would not have been proper for the court to direct a verdict (Hann v. Brooks, 331 Ill App 535, 73 NE2d 624; Larson v. Harris, 38 Ill2d 436, 231 NE2d 421). As the Supreme Court had indicated in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504, directed verdicts or judgments notwithstanding the verdicts should be entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand.

We note in the case of Larson v. Harris, 38 Ill2d 436, 231 NE2d 421, that the host driver testified that the auto and brakes were in good condition; that he was not asleep; that he was traveling between 50 to 60 miles per hour on a straight highway; that he had no recollection of events after they left the dancehall, by reason of injuries; that a State Trooper testified that the auto crossed the median strip; that it traveled 249 feet on the left shoulder and then left the highway and stopped. The court concluded that there was sufficient evidence to submit the case to the jury on the question of the host

305

driver's wilful and wanton negligence in a case in which there were no eyewitnesses. The court there indicated that the Pedrick case was not to be distorted to justify a conclusion that the trial court was in any manner to substitute its judgment for that of the jury, and that a verdict was only to be set aside if the evidence so overwhelmingly favored the defendant, that no verdict except one for the defendant could be permitted to stand. We, therefore, conclude that the issues of defendant's negligence and of plaintiff's contributory negligence were questions of fact for the jury and that the jury verdict should be permitted to stand. To come to any other conclusion would require that the trial court indulge in speculation as to what the operator of the defendant's truck was doing and also as to what plaintiff's intestate was doing at and prior to the time of the accident. The determination of these issues, on the basis of the record and photographs and the evidence, were clearly questions of fact for the jury.

■■ Instructions 15 and 17 objected to by defendant were Illinois Pattern Instructions. Instruction 15 was IPI No. 60.01 and 60.01 (rev) and simply set forth the statute which prohibited driving at such a slow speed as to impede or block normal and reasonable movement of traffic except when reduced speed is necessary to safe operation or in compliance with the law. The instruction simply admonishes the jury that if any party violated the statute, such violation, with all facts and circumstances, could be considered in determining if such party was negligent. Such instruction was proper in view of the facts and circumstances in the case. Instruction 17 was an issues instruction and in the language of Illinois Pattern Instruction 20.01 and included as clause number two thereof, the allegation of defendant's specific negligence in driving too slowly in violation of the statute referred to. We find no reversible error in the giving of either of such instructions.

■ Defendant's Instruction 6 referred to, which was refused by the court, simply instructed the jury that it was the duty of all persons operating motor vehicles upon a public highway to keep and maintain a reasonable lookout. Defendant's Instruction 3, which was given, provided in part "The plaintiff has the burden of proving each of the following propositions: first, that plaintiff's intestate, John Luker, before and at the time of the occurrence was using ordinary care for his own safety." In view of such instruction we can see no reversible error in the refusal to give the instruction as to maintaining a reasonable lookout.

■■ The instant case is a typical case which poses difficult problems for both plaintiff and defendant as well as the trial court. The evidence was adequate to justify the jury in concluding that defendant was negligent and that plaintiff was free from contributory negligence, based upon circumstances and facts testified to by persons who were at the scene following the collision, coupled with evidence of good driving habits. Negligence of the respective drivers were questions of fact for the jury and the conclusions of a jury on such questions of fact should not be disturbed either by a trial court or a court of review, based upon a conclusion that either the trial court or court of review had come to different determinations upon the same set of facts.

Since we find no reversible error in the record, the judgment of the Circuit Court of LaSalle County will, therefore, be affirmed.

Affirmed.

STOUDER and SCHEINEMAN, JJ., concur.