LaVerne Murphy, Administratrix of the Estate of La Wana Murphy, Deceased, Plaintiff-Appellant, v. Harvey J. Vodden, Defendant-Appellee.

Gen. No. 68–164.

Second District.

May 28, 1969.

Joseph A. Rosin, of Chicago, for appellant.

Matthews, Jordan, Dean and Suhler, of Aurora, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

A verdict was directed for the defendant at the close of plaintiff's evidence in a suit for wrongful death. The plaintiff appealed on the theory that the court erred in finding in favor of defendant, as a matter of law, on the issues of contributory negligence, proximate cause and defendant's freedom from wilful and wanton misconduct.

The accident occurred on March 9th, 1965, shortly after 10:00 p. m. on North Avenue (Illinois State Route 64) at or near its intersection with Edgewood. North Avenue is a four-lane highway with two eastbound and two westbound lanes separated by a double yellow line. There are shoulders abutting the paved portion of the highway.

On the evening of the accident it was cold, and the moisture left on the pavement from a day of thawing had apparently frozen to a glaze, making the road surface slippery in the vicinity of the accident.

The decedent, LaWana Murphy, had left her employment, located on North Avenue approximately five blocks east of the scene of the occurrence, shortly after 10:00 p. m., and proceeded in a westerly direction on North Avenue.

Florence Adkins, a co-worker of the decedent, testified that she was a passenger in a car driven by her father westbound on North Avenue and directly behind the Murphy car. She testified that shortly after leaving the place of her employment, because of extremely slippery conditions, her father slowed down to a speed of ten or twelve miles per hour. He was traveling in the inner lane. The Murphy car was two or three car lengths in front of her father's car, also traveling at approximately ten to twelve miles per hour in the outer lane. The Murphy car slid from the outer lane into the inner lane in front of her father's car, at which time her father took his foot off the gas and slowed down to about eight miles per hour. The Murphy car similarly slowed down. The Murphy car then went into the outer lane, continued for a short distance, then went out of control again and slid all the way across the eastbound traffic lanes of North Avenue onto the south shoulder of the highway, and came to a rest fully off the paved portion of North Avenue. She observed the position of the Murphy car as her father passed. Her father then proceeded in a westerly direction at a speed of eight to twelve miles per hour, and after going approximately three or three and one-half blocks she heard a loud crash.

On cross-examination, the witness admitted that she had given defense counsel a court reporter's statement in which she said that she was in a vehicle behind that of decedent; and that she watched decedent's automobile slide out of control into the eastbound traffic lane where she saw defendant's automobile strike the vehicle of decedent. In the statement she then proceeded to describe

how the collision rocked decedent's vehicle and pushed it sideways.

The explanation offered by the witness as to why she had told a different story of what she witnessed in plaintiff's case was that she "was not under oath" when she gave the statement to defendant's counsel.

Jim Stockham testified that he was traveling westbound on North Avenue and the Murphy car was two or three cars in front of him. He testified that the highway was extremely slippery and he was compelled to travel at a very slow rate of speed. He noticed the Murphy car swerve completely across the eastbound traffic lanes. As he passed the Murphy car it was his impression that the car was almost completely on the south shoulder of the highway. He proceeded in a westerly direction and after traveling approximately a block and a half heard a loud crash. Mr. Stockham was a fellow parishioner of decedent and decedent's family in a local church.

The investigating police officers, Fred Duwrant and Clarence Mack, testified that they received a radio call shortly after 10:00 p. m. relative to the accident. At that time they were west of the scene of the accident and proceeded on North Avenue in an easterly direction. As they approached from the west at some distance North Avenue was relatively dry, but approximately five blocks from the scene North Avenue was covered with a glaze of ice and became exceptionally slippery so that the officers were compelled to proceed to the scene of the accident for this five-block distance at a very slow rate of speed.

When they arrived on the scene they found the two automobiles, the occupants having already been taken to the hospital. They testified that the Murphy car was completely on the south shoulder of the highway facing in a southerly direction and the right side thereof was caved in and the car completely demolished. The Vodden car was also mainly off the highway, and the left rear

144

portion and wheel was on the roadway. Extensive damage was shown to the left front end.

The officers also testified that they found debris on the south shoulder of the highway and the southernmost edge of the outer eastbound traffic lane.

Deputy Duwrant testified that, in his opinion, the impact occurred in the outer eastbound traffic lane.

Robert Quackenbush, a tow truck operator, corroborated the officers' testimony as to the location of the cars on the shoulder of the highway and the finding of debris on the shoulder of the outermost edge of the eastbound traffic lane.

The defendant, Harvey J. Vodden, was called under section 60. He testified that approximately four blocks west of the accident scene he had been traveling forty to forty-five miles per hour; that when he first observed the Murphy car he slowed to thirty miles per hour. He first noticed the Murphy car crossing the center line of the inner eastbound lane when it was 100 feet away. He applied his brakes when he was about 50 feet away from the point of impact. His speed when he applied his brakes was thirty miles per hour. He further testified that his car did not slide when he applied his brakes.

Vodden placed the impact in the outside eastbound traffic lane near the south shoulder of the highway and testified that decedent's car was moving in a southwesterly direction across the eastbound traffic lanes at the time of the impact. He denied that decedent's car was standing still near the east edge of the pavement at the time of the impact.

On examination, Vodden was confronted by his deposition wherein he testified that, at the time of the accident, both cars were off the pavement and on the shoulder of the highway, and he further testified that at the time he was so deposed that is where he thought the accident had happened.

Both parties seek support in the Pedrick rule. (Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967).)

This, of course, involves a determination of whether all the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendant, that no contrary verdict based on the evidence could ever stand.

■ The rule, however, does not allow the trial court to substitute its judgment for that of the jury, if there is any substantial factual dispute. Pedrick, supra, at page 504. The issues of negligence, contributory negligence, or willful and wanton misconduct may be proven by facts and circumstances from which such conduct may be reasonably inferred; and if both the facts and the inferences to be reasonably drawn therefrom could support a verdict under the Pedrick rule, the trial court may not direct a verdict. Larson v. Harris, 38 Ill2d 436, 440, 231 NE2d 421 (1967); Luker v. Contract Steel Carriers, Inc., 103 Ill App2d 296, 306, 243 NE2d 6 (1968).

We first approach the question of whether LaWana Murphy was guilty of negligence as a matter of law which contributed to her injury and resulted in her death. It is undisputed that the decedent slid across the center line of the roadway. There is no explanation for this conduct other than the fact that the surface of the roadway was icy. A number of recent cases have held, that when a car collides with that of another in the lane of traffic where the other has a legal right to be, there is a duty to show that the car in the wrong lane is there due to some reason other than his own negligence. This is additionally supported by evidence that other cars passing at the same time were under sufficient control to remain in their own lane. Sughero v. Jewel Tea Co., 37 Ill2d 240, 242, 226 NE2d 28 (1967); Nikkinen v. Evans, 90 Ill App2d 438, 441, 232 NE2d 774

(1967) and Calvetti v. Seipp, 70 Ill App2d 58, 63, 64, 216 NE2d 497 (1966).

█ Under the facts and circumstances we do not find merit in plaintiff's argument that decedent's action was not an act of negligence as a matter of law.

The plaintiff contends, however, that even if LaWana Murphy were to be considered negligent in sliding into the wrong lane of traffic, such negligence abated when the car was stopped off the road on the shoulder, and was not the proximate cause, therefore, of the accident. Plaintiff further urges that there is substantial evidence that the cause of the accident was the defendant's sliding off the highway, failing to keep a proper lookout, and traveling at a grossly unreasonable rate of speed, taking into consideration the prevailing circumstances and the condition of the highway.

In this connection, we note the testimony of Florence Adkins that at the time the car in which she was riding passed the Murphy car, that car had completely crossed the highway and was stopped facing south on the south shoulder. She did not see the accident but heard the crash after they had proceeded three or three and a half blocks. We note also that in cross-examination this witness was confronted with her previous statement that indicated she saw the actual collision as an eyewitness. While the previous statement made no reference to where the accident happened, that is, on the shoulder or on the road, the trial court could well have considered her testimony highly equivocal in view of her prior inconsistent statements as to what she did actually observe. See Pedrick, supra, page 511; Dimitrijevic v. Chicago Wesley Memorial Hospital, 92 Ill App2d 251, 262–3, 236 NE2d 309 (1968).

Stockham's testimony that the Murphy car was stopped "mainly off the road," ("I would say most of it was off") offers evidence that the Murphy car was part-

147

ly off, partly on the highway and that it was stopped when Stockham passed before the collision.

The deputies who arrived at the scene and the tow truck operator observed debris, we note, on the south shoulder of the highway and on the south side of the outer eastbound traffic lane. All of these witnesses placed the Murphy car completely off the highway on the shoulder when they arrived, *after* the collision.

Defendant Vodden's testimony, under section 60, that the impact took place in the eastbound lane near the shoulder was sought to be impeached by his statement on deposition that both cars were off the pavement when the accident occurred. He admitted on the witness stand, "that is what he thought at the time." He explained that the question asked at the deposition was whether "some part" of the Murphy car was on the shoulder when the collision occurred; and that he had also testified at the deposition that "at the time of the impact we were half-way off." Viewed as a whole, Vodden's testimony was not equivocal on the material issue of the cause of the collision.

It was further brought out that Vodden's testimony at the deposition was that the Murphy car was sliding across the road in a southwesterly direction when the impact occurred as he was moving east. This testimony by the only eyewitness to the collision, although an interested party, appears to be the only reasonable explanation of how the accident happened, considering all of the testimony and the physical facts in aspect most favorable to the plaintiff. That there was some factual dispute as to exactly *where* the impact occurred is not material when the record is viewed in its entirety under the Pedrick rule.

 The plaintiff is bound by the testimony of the adverse witness to the extent it stands uncontradicted and unrebutted. Kapraun v. Kapraun, 12 Ill2d 348, 355, 146 NE2d 7 (1957).

While Stockham testified that the Murphy car was stopped when he passed it and that he heard the sound of the collision when he had gone one or one and one-half blocks, he did not see the cars at the moment of impact. This testimony alone would not be sufficient to sustain the plaintiff's burden of proving that the decedent's legally unexplained presence, at least partially, in the wrong lane of travel, was merely a condition and not the proximate cause of the collision.

Also, the trial court could properly consider the impeaching statement of Florence Adkins as corroborative of Vodden's testimony that the impact occurred as the Murphy car slid out of control in defendant's lane of travel; corroborated also by the physical evidence.

■ Considering all the evidence in its aspect most favorable to the plaintiff on the questions of negligence and proximate cause, we are of the opinion that the evidence so overwhelmingly favors the defendant on these issues that no contrary verdict based on the evidence could stand. The trial court was correct in directing a verdict for the defendant on the issue of plaintiff's contributory negligence.

■ We also are of the opinion that the trial court correctly found, as a matter of law, that the defendant was not guilty of willful and wanton misconduct, sufficient to overcome the negligence of plaintiff's decedent.

It is true that Vodden's testimony under section 60 as to the extent of the icy conditions was contrary to the testimony of all other witnesses and that he admitted to speeds of forty down to thirty miles an hour before braking, when all other testimony showed the necessity for markedly slower speeds and the need for an extremely cautious approach to the scene because of the icy condition. But we believe that this was insufficient to create a jury issue that the defendant had been conscious his conduct would probably result in injury to anyone, or that he exhibited a conscious or reckless in-

149

difference to the consequences of his acts, as required under the cases. Bernier v. Skripek, 86 Ill App2d 118, 128, 229 NE2d 890 (1967).

The judgment of the court below is affirmed.

Affirmed.

ABRAHAMSON and DAVIS, JJ., concur.