Carolyn WRIGLEY, Administratrix of the
Estate of Richard James Wrigley,
Deceased, Plaintiff-Appellant,

v.

ELECTRIC AND MACHINE COMPANY,
Inc., a Corporation, Defendant-
Appellee.

No. 17439.

United States Court of Appeals
Seventh Circuit.

Dec. 30, 1969.

W. Dakin Williams, Collinsville, Ill.,
for plaintiff-appellant.

Gordon Burroughs, Charles W. King,
Edwardsville, Ill., Emerson Baetz, Alton,
Ill., for defendant-appellee.

Before CASTLE, Chief Judge, DUF-
FY, Senior Circuit Judge, and FAIR-
CHILD, Circuit Judge.

CASTLE, Chief Judge.

This wrongful death action[1] was
brought by plaintiff, as administratrix
of the estate of her husband, Richard
Wrigley, who was killed in a motorbike
accident which occurred on property oc-
cupied by the defendant. The com-
plaint, as amended, contained two
counts: Count I charged the defendant
with negligence and Count II charged
wilful and wanton acts or omissions.
The district court, at the close of all the
evidence, directed a verdict in favor of
defendant on Count I, and set aside a
jury verdict for plaintiff in the amount
of $24,585 on Count II. Plaintiff ap-
peals from both rulings.

The accident which took the life of
the decedent, Wrigley, occurred at ap-
proximately 5 p. m. on Friday, May 27,
1966. Wrigley had rented a small mo-
torbike and, in the company of one Gary
Anderson, who was also on a motorbike,
proceeded on a public road, Lebanon
Road, toward defendant's property. On
this property ran the Lumaghi Mine
Road, which was a private rock-surfaced
road leading to an abandoned mine
which was being salvaged by defendant.
At the intersection of Lumaghi Mine
and Lebanon Roads was a small sign
reading, "private property no trespass-

---

1. Jurisdiction is based on diversity of citi-
zenship and it is conceded that the sub-
stantive law of Illinois applies. Erie

Railroad Co. v. Tompkins, 304 U.S. 64,
58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ing." The parties differ as to the effectiveness of this sign.[2]

Nevertheless, Wrigley and Anderson turned onto the Lumaghi Mine Road. One witness testified that this road was frequently used on weekends by motorcyclists for recreational purposes. An employee of defendant also testified that the general public used the road in connection with attending the sale of machinery and equipment formerly used by the abandoned mining operation. This same employee was assigned by defendant the duty of stretching a cable across the road when he left work and lowering it during working hours. This cable, into which Wrigley collided, causing his death, was a rusty steel wire cable to which were attached two "flags," described in plaintiff's brief as "two grey, weather-beaten rags * * * six or seven inches wide and a foot and a half long."[3] The cable was strung between two posts on either side of the road and hung about three feet above the surface.

Anderson testified that he had been down the Lumaghi Mine Road two or three months before the date of the accident when the cable had not been stretched across the road and did not know about the cable; and that, to the best of his knowledge, Wrigley had never been over the road before and was unaware of the cable. There is a conflict in the testimony among the various witnesses as to whether Anderson and Wrigley arrived at a bend in the road some 300 feet before the cable together or separated by a distance of a quarter-mile, with Anderson in the lead. The latter testified: that he was ahead of Wrigley and was travelling at 35 to 40 miles per hour, and that Wrigley was travelling at a slower speed; that he did not see the cable until he was within ten or fifteen feet of it and was able to stop his bike only by "laying it down"; that he remounted his vehicle and rushed back to warn Wrigley; that Wrigley apparently did not hear the warning and continued down the road, where he collided with the cable causing his death. A defense witness testified to the effect that Wrigley and Anderson arrived together and that Wrigley was warned of the cable by Anderson, although this witness admitted not being able to hear the words spoken in the alleged conversation between Anderson and Wrigley.

■ Plaintiff argues that, assuming Wrigley was a trespasser or licensee, the defendant breached that degree of duty owed to such a person. It is well-settled under Illinois law that while owners and occupiers of land are not under a duty to keep property in a safe condition for trespassers or licensees,[4] a land-owner is liable to such persons for injuries resulting from wilful and wanton acts or omissions.[5]

In Hering v. Hilton, 12 Ill.2d 559, 564, 147 N.E.2d 311, 313 (1958), the Supreme Court of Illinois stated:

"Wilful and wanton misconduct has been defined in myriads of cases each one reiterating or embellishing the phraseology of its predecessors. Streeter v. Humrichouse, 357 Ill. 234, 191 N.E. 684; Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 980; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 69 N.E.2d 293; Mower v. Williams, 402 Ill. 486, 84 N.E.2d 435; Myers v. Krajefska, 8 Ill.2d 322, 328, 134 N.E.2d 277. One often quoted definition is that set forth in Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, at page 583, 69 N.E. 2d 293, at page 300: 'A wilful or wanton injury must have been intentional or the act must have been committed

---

**2.** Plaintiff contends that it was impossible to determine whether this sign referred to the land adjoining the Lumaghi Mine Road, the road itself, or both.

**3.** Defendant, in its brief, also cites this language as descriptive of the cable.

**4.** Kahn v. James Burton Co., 5 Ill.2d 614, 126 N.E.2d 836 (1955).

**5.** Chicago Terminal Transfer R. Co. v. Kotoski, 199 Ill. 383, 65 N.E. 350 (1902).

under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.' In the recent case of Myers v. Krajefska, 8 Ill.2d 322, 134 N.E.2d 277, this court refused to overrule that definition. The court noted that although there are some variations in the phraseology of the definitions of wilful and wanton misconduct in the cases, the basic concept as applied in the case law is the same, and since such conduct is usually a matter of degree, no hard-and-thin-line definition could be made."

Cf. Klatt v. Commonwealth Edison Co., 33 Ill.2d 481, 488, 211 N.E.2d 720 (1965).

In Cooper v. Cox, 31 Ill.App.2d 51, 56, 175 N.E.2d 651, 653 (1961), the Appellate Court commented on the above-quoted language, stating: "The words, 'failure to discover the danger through recklessness or carelessness, when it could have been discovered by the exercise of ordinary care' in effect equate recklessness with ordinary negligence, that is, carelessness." See also Spivak v. Hara, 69 Ill.App.2d 22, 26, 216 N.E.2d 173, 175 (1966), where the court noted, "The words wilful and wanton * * * no longer have the connotation of wilfulness or even utter lack of restraint, but have been used to define a vague and somewhat shadowy area close to ordinary negligence."[6]

In reviewing the district court's setting aside the verdict in the instant case, then, we must determine whether the record, viewed in the light most favorable to the plaintiff, Zink v. Radewald, 369 F.2d 253, 255 (7th Cir. 1966), 5 Moore's Fed.Prac. ¶ 50.07[2], would support the jury finding that defendant was guilty of wilful and wanton misconduct, under Illinois law, in stretching the cable across the Lumaghi Mine Road. There is some Illinois precedent to aid our determination of this issue. In Moore v. Ohio Oil Company, 241 Ill. App. 388 (1926), the plaintiff, a guest of a resident employee of the defendant landowner, was injured by a wire cable stretched across a road which was known by the owner to be used by persons visiting the employee on the defendant's property. The court reversed a directed verdict for the defendant, stating:

"The view founded in natural justice, which has the approval of many courts, is that when a landowner has knowingly permitted licensees to use a well defined path or roadway across his premises for some time he should not by any affirmative act make the roadway more dangerous for such licensees without giving them notice of the changed conditions, and if he fails to give notice of the fact that he has made the way more dangerous he will be held to respond in damages for the resulting injury. [Citations omitted.]

"Where the public has been accustomed to travel a well defined road across one's land, he is liable to a licensee for personal injuries occasioned by a wire or rope stretched across the road if he has given no warning of the changed condition. [Citations omitted.]

"The courts of this State have frequently said that the owner of land assumes no duty to one who is on his premises by permission, as a mere licensee, except that he will refrain from wilful or affirmative acts which are injurious. Gibson v. Leonard, 143 Ill. 182 [32 N.E. 182, 17 L.R.A. 588]; Eckels v. Maher, 137 Ill.App. 45; Jacobs v. Michel, 137 Ill.App. 221; Rousch v. Oblong Gas Co., 179 Ill.App.

---

6. In the instant case, the trial judge instructed the jury that wilful and wanton conduct meant "a course of action which shows actual or deliberate intentions to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others."

600–604; Volluz v. East St. Louis L. & P. Co., 210 Ill.App. 565–569. So far as we are advised they have never had occasion to consider what 'affirmative acts' would be sufficient to impose a liability upon the landowner. We are of the opinion that when defendant stretched the wire across the roadway without giving any warning of the changed condition it was such an affirmative act as would create a liability to one who was thereby injured while in the exercise of due care." 241 Ill.App. at 390–391.[7]

Similarly, in the instant case, there was uncontroverted evidence that the Lumaghi Mine Road was frequently used by motorcyclists and that the general public used it to reach defendant's salvage operations. The case at bar differs from *Moore* by the fact that defendant had attached two dirty rags, or "flags," to the cable as an attempted warning device. However, the effectiveness of those flags as such a device was a question of fact for the jury, as are all elements of wilful and wanton misconduct. Robins. v. Pitcairn, 124 F.2d 734 (7th Cir. 1941); Streeter v. Humrichouse, 357 Ill. 234, 238, 191 N.E. 684 (1934). Certainly there was enough doubt raised as to the visibility of the cable and the flags to constitute a question of fact upon which reasonable minds could differ.[8] On the record before us, therefore, we hold that the jury's finding that defendant was guilty of wilful and wanton misconduct in stretching the cable across the Lumaghi Mine Road, and the implicit finding that the flags were not sufficient to effec-

tively warn travellers of the danger created by the cable, was not so contrary to the manifest weight of the evidence as to require the verdict to be set aside.

Accordingly, we reverse the ruling of the district court setting aside the verdict for plaintiff of $24,855 on Count II of the complaint, and remand with directions to reinstate that verdict.[9] This holding makes it unnecessary to discuss the propriety of the directed verdict on Count I.

Reversed and remanded with directions.

---

7. See also Rosenberger v. Consolidated Coal Co., 318 Ill.App. 8, 14, 47 N.E.2d 491, 493 (1943), where the court restated the rule in Moore v. Ohio Oil Co. thus: "[W]here a well-defined path has been used openly and continuously, an owner may not interfere with the pathway, or make it more dangerous, without giving notice to the users of the pathway, or without guarding a dangerous place so made."

8. Among such evidence was Anderson's testimony that he did not see the cable un-

til he was ten or fifteen feet from it and barely missed hitting it himself, although he was looking straight ahead, testimony that a motorbike the size of that which Wrigley was riding was not capable of "jumping" over the cable and that there was no bump or incline before the cable otherwise permitting such a jump, and the photographic exhibits entered into evidence by the plaintiff.

9. See Kippen v. Jewkes, 258 F.2d 869 (10th Cir. 1958); 5 Moore's Federal Procedure ¶ 50.14.