Earl R. ROGERS, Administrator of the Estate of John T. Kelsey, Deceased, Plaintiff-Appellee,

v.

HI–WAY DISPATCH, INC., a corporation, and Harry Holdrun, Defendants-Appellants.

No. 71–1445.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1972.

Decided June 15, 1972.

As Corrected July 19, 1972.

Rehearing Denied July 21, 1972.

Jack E. Horsley, Richard F. Record, Jr., Mattoon, Ill., for defendants-appellants.

Francis D. Conner, Belleville, Ill., John R. Glidden, Carthage, Ill., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, and HAMLEY * and CUMMINGS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is a diversity suit. On April 13, 1967, at about 5 p. m. on a clear day, a two-truck collision occurred on Interstate Highway 70 about two miles west of Effingham, Illinois. Each truck was traveling in an easterly direction. The highway was a four-lane divided throughway, and the trucks had been traveling in the far righthand lane.

The truck owned by defendant, Hi-Way Dispatch, Inc., and driven by defendant Harry Holdrun, had been having mechanical defects with its transmission so that at times the malfunction made it impossible to drive the truck at a speed greater than 18 to 25 miles per hour.

Holdrun had been assigned by Hi-Way Dispatch, Inc. to drive one of their semi-trailers from Marion, Indiana, to St. Louis, Missouri, and return. Driver Holdrun, on at least three occasions after the trip to St. Louis had started, advised the President of Hi-Way Dispatch, Inc., one Tony Bove, of the operating defects of the truck. The trip to St. Louis ordinarily would consume ten hours but on this trip it required seventeen hours.

After driver Holdrun unloaded his truck on the morning of March 13th, he again called Tony Bove, his boss, who instructed him to attempt to drive the truck back to Marion, Indiana.[1]

The truck which the plaintiff's decedent, Kelsey, was driving was traveling at approximately 55 miles per hour, which is the speed limit for semi-trailers on Interstate Highway 70. At the time of the collision, one passenger automobile had negotiated passing both trucks and another passenger automobile was about to effect passing. The semi driven by Kelsey approached defendants' truck and despite a last second turn of the wheel to the left, the cab portion of his truck

---

* Circuit Judge Frederick G. Hamley of the Ninth Circuit is sitting by designation.

1. Holdrun again called Bove from Pocahontas, Illinois, on his return trip and asked for permission to have a mechanic at Effingham, Illinois, repair the truck. Pocahontas is approximately 60 miles west of Effingham.

struck the rear of the trailer unit of defendants' truck. The collision caused both vehicles to fall down an embankment into a thirty-foot ditch, resulting in Kelsey's death.

At the time of the collision, defendants' truck's transmission was fixed in the low range of gears, and had been traveling at the speed of 18 to 25 miles per hour. This was considerably less than the minimum legal limit of 45 miles per hour on Interstate Highway 70.

The driver of defendants' truck testified that when the speed of the truck was reduced to the 18 to 25 mile range, he would turn a switch in his cab which turned on red flasher lights on the rear of his truck. He testified his purpose was to warn vehicles behind him that he was driving at a slow speed. However, when testifying, he could not recall whether his red lights were operating just before the collision.

Two independent witnesses who were driving in separate automobiles were proceeding in the same direction as the trucks and closely behind them. Allen Miller passed the trucks just moments prior to the collision. His wife, Susan Miller, was a passenger in the second car immediately behind the trucks. They both testified that they saw no signal or brake lights in operation on the rear of defendants' truck.

On February 5, 1967, the jury returned a verdict in favor of the plaintiff for $50,000 which was reduced to the statutory limit of $30,000 in effect under Illinois law on that date, with an additional sum of $1,477.90 for funeral expenses. Defendants filed a Post Trial Motion for a directed verdict and judgment notwithstanding the verdict, which motion was denied by the trial judge. Defendants appeal the denial of their motion for judgment notwithstanding the verdict.

■ This action was tried before a jury on a two-count complaint. One count was based on the theory of negligence and the other count on the theory of wilful and wanton conduct. General forms of the verdict were given by the District Court. Therefore, both parties to this suit concede that in order to prevail in this action under the rule of Illinois substantive law in Greene v. Noonan, 372 Ill. 286, 291, 23 N.E.2d 720 (1939), plaintiff must establish a prima facie case on the wilful and wanton count of the complaint or the verdict cannot stand.[2]

At the trial and on this appeal, defendants strongly insist from the record herein that the negligence of defendant's driver, if any, in proceeding below the minimum speed limit on Interstate Highway 70 cannot be considered as a proximate cause of the accident. Furthermore, defendants believe the evidence presented before the trial court established that plaintiff's decedent, Kelsey, was guilty of contributory wilful and wanton conduct as a matter of law and consequently was guilty of contributory negligence as a matter of law. The question remains before us whether the plaintiff has met his burden of proof in establishing wilful and wanton conduct on the part of the defendants, and the absence of wilful and wanton conduct on his own behalf. If plaintiff has not met this burden of proof, defendants contend, on appeal, that they are entitled to judgment against the decedent plaintiff notwithstanding the verdict of the jury.

The rule in Illinois with respect to direction of verdicts is well stated in Pedrick v. Peoria & Eastern R. R. Co., 37 Ill.2d 494, 510, 229 N.E.2d 504, 513 (1967): "In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

2. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) demands application of state substantive law in cases where such state law is outcome-determinative.

In our view, the District Court did not err in refusing to grant defendants' motion of judgment notwithstanding the verdict.

A pertinent case where the facts are quite similar to those of the instant case is Luker v. Contract Steel Carriers, Inc., 103 Ill.App.2d 296, 243 N.E.2d 6 (1968). There, a truck driver ran into the rear of the truck ahead of him which had been operating at a slow speed on Interstate Highway 80 in violation of Illinois law. The Appeals Court there decided it would have been improper for the trial court to direct a verdict.

In Wrigley v. Electric and Machine Company, 419 F.2d 972 (7 Cir., 1969), our Court considered the action of a trial court in granting a post trial motion setting aside a jury verdict in plaintiff's favor. We reversed the trial court holding that such determinations of fact were for the jury; that their verdict " . . . was not so contrary to the manifest weight of the evidence as to require the verdict to be set aside." (419 F.2d at page 975).

Clearly from the rule of *Pedrick, supra,* all reasonable inferences from the evidence must be considered in a light most favorable to the party against whom such a motion is made. Evident from the record of the case at bar, the plaintiff has produced sufficient evidence and reasonable inferences can be drawn therefrom to sustain plaintiff's burden of proof and support the verdict of the jury in his favor.

The acts of the defendants permitting the semi-trailer to proceed on Interstate Highway 70 at 18–25 miles per hour well below the posted legal limit of 45 miles per hour, failing to use the blinker lights as a warning to approaching motorists, and operating a malfunctioning semi-trailer on said Interstate Highway, were sufficient proof attesting to the wilful and wanton conduct of the defendants. We feel by alleging and proving these acts and omissions, the plaintiff has established a prima facie case of wilful and wanton conduct on the part of defendants.

Furthermore, from the evidence received at trial, it appears that plaintiff was driving at a speed at or below the maximum speed for semi-trailers on interstate highways; that he attempted to swerve and avoid the collision; that one passenger vehicle had passed the trucks and another passenger vehicle was about to negotiate passing, when the collision occurred. We feel that plaintiff also met his burden of proof that he was free from wilful and wanton conduct.

 Whether the defendant's conduct was the proximate cause of the accident was, in our judgment properly left to the jury. Ordinarily, the question of proximate cause is a question of fact to be determined by a jury after a consideration of all the evidence.

We hold that the verdict of the jury in the instant case was proper, and we approve the action of the trial court in denying the Post Trial Motion of the defendants.

Judgment,

Affirmed.