(No. 6425—

ARLENE SPERINDEO and ROBERT PAUL, Claimants, *vs.* STATE OF ILLINOIS, DEPARTMENT OF CONSERVATION, Respondent.

*Opinion filed October 4, 1974.*

SHELDON N. REIBMAN, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, for Respondent.

PERLIN, C. J.

This is an action for personal injuries suffered by claimants in the Illinois Beach State Park when a motorcycle on which they were riding, collided with a metal cable strung across a park road. The park, and all roads therein, were under the jurisdiction of the respondent.

Claimants arrived at Illinois Beach State Park at approximately 8:30 p.m. on July 10, 1971, intending to camp overnight. On entering the park, they passed an unoccupied ranger station and proceeded to set up their camp without obtaining a permit. Claimant Paul, who had previously camped overnight in the park on at least six prior occasions, testified that a sign at the station directed campers to report to the ranger station the next morning if no one was present. However, a park ranger testified that a sign on the booth directed campers to await the return of the ranger before proceeding into the park.

Claimants testified that at approximately 11:00 p.m. that evening, Claimant Paul left the park to repair a leak in the tire of his motorcycle. They said he returned at about 11:20 p.m., and that at about 11:45 p.m., they left their campsite on the motorcycle to drive to a beachhouse on the opposite side of the park in order to wash for the night.

Claimants testified that they used the same road to the beachhouse as Claimant Paul had earlier used to leave and re-enter the park after fixing his flat tire. This road was one of several which radiated in various directions from the park's main parking lot to the interior of the park. To get to the beachhouse from their campsite, it was necessary for claimants to ride to the main parking lot and there get on another road leading to the beachhouse. Although the road from their campsite to the parking lot was designated a "fire lane," it was open to vehicular traffic prior to the time the park closed for the night.

When the park closed, in an effort to keep vehicular traffic out of the camping area, employees of the State Department of Conservation placed a white, wood barri-

cade in the center of this road, and strung a steel cable across the entire width of the road about three feet off the ground. The barricade and cable were erected near a point where the road fed into the main parking lot. Of the several roads which led into the park from the parking lot, this was the only road shut to traffic.

At the point of the barricade, the road was approximately twenty feet wide. The wood barricade was sixteen feet wide, thus leaving a gap of two feet between the edge of the road and the barricade on each side of the barricade. The steel cable extended over the entire width of the road and was secured to posts on each side of the road.

The weather was clear on the night of the accident, but the road was unlighted. The approach to the barricade from claimants' campsite was straight and unobstructed. Claimants testified that the headlight on their motorcycle was operating.

Claimants said that as they rode toward the parking lot from the interior of the park at about five miles per hour, they drove into the cable and were thrown from the motorcycle. Claimant Paul said he never saw a wood barricade in the center of the road.

Robert Boone, a park employee stationed at the permit booth on the night in question, witnessed the accident. He said it appeared that claimants were attempting to ride around the barricade when their motorcycle struck the cable. Boone said he noticed scrapes on the right side of the barricade where it was struck by the motorcycle.

Boone said he erected the cable across the road on the night in question at 10:00 p.m. when the camping area closed for the night. He also said that at 11:00 p.m.

an announcement was made over the loudspeaker that the park was closed.

This Court has previously determined that visitors to a State park are invitees to whom the state owes a duty of reasonable care in the maintenance of its parks. *Damermuth* v. *State*, 25 C.C.R. 353, 356; *Kamin* v. *State*, 221 C.C.R. 467. Claimants contend that respondent breached its duty in erecting the steel cable across an unlighted road without providing an adequate warning of the existence of the cable. Respondent urges that the barricade provided adequate warning of the existence of the cable, and that claimants' injuries were proximately caused by the negligence of Claimant Paul.

A review of the pertinent Illinois authorities compels a finding that in erecting the steel cable across a dark road, over a barricade which did not extend across the full width of the road, the respondent was negligent. In *Moore* v. *Ohio Oil Co.*, 241 Ill. App. 388 (1962), the court held that a landowner who stretches a wire across a roadway without giving warning of the change in condition of the roadway, is liable to one injured as a result thereby. The Court said:

"Where the public has been accustomed to travel a well-defined road across one's land, he is liable to a licensee for personal injuries occasioned by a wire or rope stretched across the road if he has given no warning of the changed conditions."

In *Wrigley* v. *Electric and Machine Company*, 419 F. 2d 972 (7th Cir. 1969), the defendant stretched a steel wire across a private road about three feet off the ground. Attached to the wire were two flags, six to seven inches wide and approximately a foot and one-half long. Wrigley, who was riding his motorcycle along the road during daylight hours, collided with the cable and was killed. The trial court set aside a jury verdict that found the

defendant guilty of wilfull and wanton misconduct. After reviewing the Illinois authorities on point, the court of appeals reversed and remanded with directions to reinstate the verdict. The Court found the defendant's actions "not sufficient to effectively warn travelers of the danger created by the cable," and held that the facts would support a finding of wilfull and wanton conduct.

While we find respondent negligent in erecting the cable barricade, the facts of the case at bar unlike those in *Wrigley* v. *Electric and Machine Company*, supra., will not support a finding of wanton and wilfull misconduct. In *Wrigley*, the approach to the portion of the road across which the cable was strung was not in plain view, but was at the end of a sharp curve in the road. Further, the only warning of the existence of the wire was two grey rags. Here, the wire was strung at a point where the approach to the barricade was straight and unobstructed and a 16-foot wide white barricade covered most of the road and provided some warning of an obstruction.

Having determined that respondent was negligent but not guilty of wanton and wilfull misconduct, we next consider whether claimants have established their freedom from contributory negligence. Claimant Paul testified that he was traveling about 5 miles per hour when his motorcycle struck the wire, and that the headlight on his motorcycle was operating. Yet, he said he never saw the 16-foot wide, white barricade which blocked the road at the point of the accident. Chapter 95½, Illinois Revised Statutes, Section 12-201, requires a motorcycle to be equipped with a headlight of sufficient power to project a beam over a minimum distance of 500 feet. Had Claimant Paul been acting with reasonable regard for his own safety, he certainly would have seen the white barricade as he approached along a straight road at 5

miles per hour with his motorcycle's headlight operating. We, therefore, find that Claimant Paul has failed to establish his freedom from contributory negligence, and his claim must be denied.

Claimant Sperindeo had no control over the operation of the motorcycle, and respondent concedes that she was free of contributory negligence.

Claimant Sperindeo was taken by ambulance to a hospital following the accident, where she remained for one week. Her teeth were driven through her lip in the collision, and her mouth required stitches. She suffered a cerebral concussion and bruises of the face, back, and head. She testified that her right eye was swollen shut for three weeks and alleged a loss of vision in the eye. However, an optometrist examined Miss Sperindeo at respondent's request and reported that her vision was within normal limits. Her medical expenses totalled $807.35, and she lost approximately $450.00 in wages.

The Court finds that her injuries were proximately caused by the negligence of the respondent.

The claim of Claimant Paul is hereby denied.

Claimant Sperindeo is hereby awarded the sum of $3,600.00.